THE BRITISH AMERICA ASSURANCE COMPANY v. J. H. BRADFORD.

**No. 10924.**

1. INSURANCE—*Mill Machinery.* Machinery placed in a mill building, firmly attached to and connected with it, and designed for the operation of the mill, is real property within the meaning of the "valued-insurance-policy" law. (Laws 1893, ch. 102.)

2. ——— *Failure to Declare Forfeiture—Waiver.* When a fire insurance company, after the occurrence of a loss by one of its policy-holders, receives knowledge of an act upon his part justifying it in declaring a forfeiture of his policy, and fails to make such declaration, but, instead, negotiates with him for a settlement of the loss, it will be deemed, when sued upon the policy, to have waived the right of forfeiture.

3. ——— *Attorney's Fee.* Section 3, chapter 102, Laws of 1893, allowing attorney's fees to plaintiffs in suits upon fire-insurance policies, is constitutional.

Error from Morris District Court; O. L. MOORE, judge. Opinion filed December 10, 1898. Affirmed.

*Sylvester G. Williams,* and *Bertram & Nicholson,* for plaintiff in error.

*Madden Bros.,* and *J. M. Miller,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action brought by J. H. Bradford against the British America Assurance Company upon a policy of fire insurance, executed under what is called the "valued-policy law." (Laws 1893, ch. 102.) The policy contained a forfeiture clause terminating the rights of the insured under it in the event that more than $3000 additional insurance should be placed upon the property. It also contained stipulations providing for arbitration in the events of loss and a disagreement as to the

amount justly payable.  The amounts of the risks,. together with descriptions of the property upon which. taken, were stated in the policy as follows :

"$666.00 on his three-story and basement, stone and frame, shingle-roofed, water-power, flour-mill building, situate," etc.

"$1334.00 on all fixed and movable machinery, gearing, shafting, belting, tools, and scales, while contained in above-described building."

The insured property was totally destroyed by fire. The insured had placed upon it, contrary to the provisions of the policy, more than $3000 additional insurance.  After the fire, correspondence occurred between the insured and the company's general counsel looking to a settlement of the loss, and personal negotiations with the same end in view were also had between him and the company's adjuster.  The insured exhibited the policy in question to the adjuster and informed him of the overinsurance.  After receiving this information and examining the policy, the adjuster stated to the insured that his policy was "all right."  The insured likewise informed the company's. general counsel of the overinsurance.  Upon receiving this information the counsel failed to make any claim of forfeiture, but wrote to the insured that, while not waiving the right of forfeiture, he would reserve the matter for investigation and consideration. After this the company and the insured chose arbitrators to determine the amount of the loss.  The arbitration was not had, for some reason not clearly explained to us in the briefs of counsel, and which we have not examined the record to ascertain.  Whatever it may have been it is immaterial to a correct determination of the case.  After the failure of the attempt to arbitrate suit was instituted.  Special findings

were made by a jury and upon them judgment was rendered for the full amount of the policy, together with an attorney's fee to plaintiff as allowed by the statute.

The insurance company prosecutes error to this court. It contends: (1) That the mill machinery and fixtures described in the second of the above-quoted clauses of the policy were not real property, but were personal property, and therefore that the loss as to them was not covered by the terms of the valued-policy law of 1893; (2) that the action cannot be maintained as to such personal property because of the agreement to arbitrate concerning it; (3) that the policy was forfeited because of a violation of the clause in it against overinsurance; (4) that the statute allowing attorney's fees to plaintiffs in such cases is unconstitutional. None of these contentions is sound. As to the first the jury was specially asked: "Was the machinery covered by the policy of insurance in this case firmly fixed and attached to and connected with the building, and intended to be a part of the building, and treated as such by all parties hereto?" This was answered: "Yes." This finding establishes the character of the mill machinery as real property, and therefore brings it fully within the terms of the valued-policy law. See in this connection *Havens v. Fire Ins. Co.*, 123 Mo. 403, 27 S. W. 718. The second proposition of the plaintiff in error falls with the first. If the mill machinery was not personal property there was nothing to arbitrate. The policy, covering nothing but real property, must be paid in full. The third claim of error is also unsound. The plaintiff in error, with knowledge of the overinsurance, a fact entitling it to declare a forfeiture of the policy, made no such declaration, but negotiated with the in-

sured upon the assumption of its liability for some amount. This was a waiver by it.

"It may be asserted broadly that, if in any negotia-tions or transactions with the insured, after knowledge of the forfeiture, it (the insurer) recognizes the continued validity of the policy, or .does acts based thereon, or requires the insured, by virtue thereof, to do some act, or incur some trouble or expense, the forfeiture is, as matter of law, waived; and it is now settled . . . that such a waiver need not be based upon any new agreement or an estoppel." (*Titus v. Glens Falls Ins. Co.*, 81 N.Y. 410.)

The fourth objection, relating to the constitutionality of the act of 1893, allowing attorney's fees to plaintiffs in suits upon fire-insurance policies, is likewise unsound. It has been held by this court that a similar statute, imposing attorney's fees in suits against railroad companies for negligently setting out fires, is not a violation of the fourteenth amendment to the constitution of the United States. (*Railroad Co. v. Matthews*, 58 Kan. 447, 49 Pac. 602.) In that case the statute under consideration was held to be a police regulation, proper to be made and enforced, in view of the public character of railroad companies and the frequency with which injuries by fire were committed by them. In principle the present case is nowise different from the one cited. Fire insurance has come to be a business public in its nature. It has come to be "clothed with a public interest," and is therefore properly a subject of legislative regulation. The state is interested in the preservation of the property of its citizens, that the general values of the commonwealth may not be impaired. Especially is it interested in the preservation of its homes and their rebuilding when destroyed. To the end that insurance companies

may be compelled to respect the obligations volun-
tarily taken upon themselves to subserve the policies
of the state in these respects, the legislature may
rightfully impose upon them the repayment to in-
surers of attorneys' fees necessarily incurred in suits
to make good their delinquencies.   To do so is no
violation of the fourteenth amendment declaring that
"no state shall deny to any person within its juris-
diction the equal protection of the law."   That
amendment has never been held to deny to a state
the right properly to classify the subjects of its legis-
lation and to impose upon the different classes differ-
ing restrictions and regulations.   On the contrary, it
has been repeatedly held that such right of classifica-
tion exists.   It was so held in *Gulf R. R. Co. v. Ellis*,
165 U. S. 155, upon which counsel for plaintiff in er-
ror rely.   The fundamental error, however, in that
and similar cases is the failure to differentiate rail-
road, insurance and other like corporations from pri-
vate individuals and purely private corporations, and
to view the public character of the former and the
private character of the latter as bases for a just and
reasonable classification, as was done by the courts in
the older and better-considered cases.   Between the
subjects of the classification made in the act of 1893
there is no discrimination ; there is no denial to any
one of the equal protection of the law.   It will be
observed that the statute in question exempts no
classes of fire-insurance companies.   Whether foreign
or home, whether of great or small capital, whether
"old line," mutual, or fraternal, whether doing
much or little business, all are included within its
terms.   The law of 1893 is not unconstitutional.

There is no merit in any of the contentions of plain-
tiff in error, and the judgment of the court below is
affirmed.