THE AMUSEMENT SYNDICATE COMPANY *et al., Appel-lees,* v. THE PRUSSIAN NATIONAL INSURANCE COMPANY *et al., Appellants.*

No. 17,178.

SYLLABUS BY THE COURT.

1. INSURANCE—*Total Loss—Failure to Rebuild—Measure of Damages—Loss of Rents.* An insurance policy upon a building used for a theater, stores and offices, provided in substance that in the event of a fire the insurer's liability should be measured by the loss of rent until the building was rebuilt or repaired, but in case the insured elected not to rebuild or repair the premises the amount should be determined by the time which would have been required for such purpose. The building was practically entirely destroyed by fire. A city ordinance forbade its reconstruction as a theater. A store and office building was erected upon the site. *Held,* that the recovery should be based upon the time it would have taken to reconstruct the old building, had that been permissible, and not upon the time it actually took to build the new one.

2. "VALUED POLICY"—*Not Applicable to Insurance against Loss of Rents.* The provisions of the valued-policy law making the amount named in an insurance policy covering improvements on real estate conclusive evidence of value in case of a total loss, do not apply to a policy which insures against the loss in rents through the destruction of such improvements.

3. ARBITRATION—*When neither Assured nor Insurer Demands Arbitration—Action on Policy.* An insurance policy contained these provisions: "In the event of disagreement as to the amount of loss the same shall . . . be ascertained by two competent and disinterested appraisers; the insured and the company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. . . . The loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of loss herein required have been received by the company, including an award by appraisers when appraisal has been required. . . . No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements." *Held,* that an action upon the policy, brought a year after a fire loss, can not be defeated by a showing that although there had been a disagreement as to the amount of

the loss, no arbitration had been had, and that the plaintiff had made no effort to bring one about, where it appeared that the defendant had likewise been inactive in the matter. '

4. PROCEDURE—*Attorneys' Fees—No Error.* The trial court at the time of rendering judgment held that a statute authorizing the allowance of attorneys' fees as costs in certain actions did not apply. After an appeal had been taken, and at a subsequent term, the ruling was reconsidered and such fees were allowed. *Held,* that whether or not such procedure was irregular, the question of the applicability of the statute can be determined upon the appeal.

5. ATTORNEYS' FEES—*Allowed in Action on Policy Insuring against Loss of Rent.* One section of a statute provides that where improvements upon real estate are insured and a total loss occurs, the amount named in the policy shall be deemed the true value of the property. Another section provides that it shall be the duty of a company insuring real property to place in the policy a correct description of the premises, and that an erroneous description shall not defeat a recovery. A subsequent section provides that the court in rendering judgment on "any such policy of insurance" shall allow the plaintiff an attorneys' fee. *Held,* that the provision relating to an attorneys' fee applies to a judgment upon a policy insuring the owner of a building against loss of rent occasioned by its being injured or destroyed by fire.

Appeal from Shawnee district court. Opinion filed July 7, 1911. Modified and affirmed.

STATEMENT.

THE statute allowing attorneys' fees, the substance of which is stated in the opinion, is here given in full. The words in brackets were used in the act of 1893 (Laws 1893, ch. 102), but omitted at the time of the amendment in 1897 (Laws 1897, ch. 142) ; the new matter which was then added is printed in italics.

"SECTION 1. Whenever any policy of insurance shall be written to insure any *improvements upon* real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of insurance written in such policy shall be taken conclusively to be the true

Syndicate Co. v. Insurance Co.

value of the property insured, and the true amount of loss and measure of damages, *and the payment of money as a premium for insurance shall be prima facie evidence that the party paying such insurance is the owner of the property insured:* Provided, that any insurance company may set up fraud in obtaining the policy as a defense to a suit thereon.

"SEC. 2. *It shall be the duty of every person, corporation, association, partnership, company or individual issuing any policy insuring real property of any description against loss by fire or any of the risks usually insured against in their insurance policies, by itself or its agents, to make careful examination of the premises insured, and to place in such policy a full, complete and correct description of the property or premises insured thereby; and no failure to properly and fully describe such property or premises, nor any erroneous statement in the description of such property or premises shall be a defense in any action to collect for loss thereon or thereunder when such description shall be sufficient to enable a person of ordinary intelligence to find and fully identify the property or premises upon which said insurance was written, and upon which premiums have been paid, and this notwithstanding any provisions in said insurance policy contained.*

"SEC. [2] 3. This act shall apply to all policies of insurance hereafter [made or] written [upon real property] in this state, and also to the renewals which shall hereafter be made of all policies [heretofore] written in this state, and the contracts made by such policies and renewals shall be construed to be contracts made under the laws of this state.

"SEC. [3] 4. The court, [upon] *in* rendering judgment against [an] *any* insurance company [upon] *on* any such policy of insurance, shall allow the plaintiff a reasonable sum as an attorney's fee to be [taxed] *recovered* as a part of the costs."

*Eugene S. Quinton,* for the appellants.

*Mulvane & Gault,* and *D. R. Hite,* for the appellees.

The opinion of the court was delivered by

MASON, J.: The plaintiffs recovered a judgment upon two fire insurance policies, and the defendants appeal.

24—85 KAN.

The policies were substantially alike, and the clauses fixing the measure of liability read as follows:

"In case the above-named building or any part thereof shall be rendered untenantable by fire, this company shall be liable to the insured for the actual loss of rent ensuing therefrom. . . . The assured agreeing to rebuild or repair said premises in as short a time as the nature of the case will admit, loss to be computed from the date of the occurrence of said fire and cease on said building being rendered tenantable; and in case the assured shall elect not to rebuild or repair the premises, then the loss of rent shall be determined by the time which would have been required for such purpose."

A part of the building insured was used as a theater, the rest for stores and offices. It was burned September 24, 1906. The plaintiffs' evidence tended to show that practically it was wholly destroyed and that a city ordinance prevented its being rebuilt according to its original plan; that it was replaced by a store and office building, which was ready for occupancy October 15, 1907. The policies were for $1500 and $1000 respectively. Judgment was rendered December 31, 1909, for $2985.30, being the face of the policies, with six per cent interest to the date of the verdict. This amount was apparently determined upon the theory that (up to the limit set in the policies) the plaintiff was entitled to recover what the old building could have earned in rents in the interval between the fire and the completion of the new building. The defendants introduced evidence tending to show that the original building could have been reconstructed in a shorter time than was occupied in the erection of the new one. We think that inasmuch as the plaintiff—for whatever reason—failed to reconstruct the former building, the situation is the same as though he had voluntarily elected not to do so, the fact that he erected a different kind of building on the site not affecting the matter one way or the other. Possibly it took no longer to build

the office building than it would have done to rebuild the theater, but we do not find that the evidence shows this. This view requires a reëxamination of the question of the amount of recovery, inasmuch as the judgment awarded seems to be based upon the evidence of the time taken to construct the new building rather than upon an estimate of the time it would have taken to reproduce the old one.

The plaintiffs contend that the insurance was written to insure profits, and that because of the total destruction of the property the amounts named in the policies must be conclusive. We think, however, the language employed, considered as a whole, establishes the test already indicated. The plaintiffs further suggest that the valued-policy law applies, and that the defendants having insured in a stated amount against the loss of rents for the time required to rebuild in case of a total loss are precluded from denying that the rent for such a period would amount to the face of the policies. The statute reads:

"Whenever any policy of insurance shall be written to insure any improvements upon real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of insurance written in such policy shall be taken conclusively to be the true value of the property insured, and the true amount of loss and measure of damages." (Laws 1897, ch. 142, § 1, Gen. Stat. 1909, § 4260.)

This language by a liberal interpretation might be held to mean that the amount named in a policy covering losses in rent through the injury or destruction of improvements upon real estate should be taken as "the true amount of loss and measure of damages." But we think the more reasonable view is that the phrases quoted do not enlarge the meaning of that to which they are attached—"the true value of the property insured,"

and that this refers to the value of the physical property and not to the value of the rent roll.

The plaintiffs, to prove the amount of the rent lost, gave evidence of the income from that source at the time of the fire. This is objected to substantially on the ground that no showing was made that the income would have remained the same in the interval. In the absence of anything to suggest the contrary we think there would be a fair inference to that effect.

The policies contained these provisions:

"In the event of disagreement as to the amount of loss the same shall . . . be ascertained by two competent and disinterested appraisers; the insured and the company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. . . . The loss shall not become payable until 60 days after the notice, ascertainment, estimate and satisfactory proof of loss herein required have been received by the company, including an award by appraisers when appraisal has been required. . . . No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

No appraisement by arbitrators was had, nor was any attempt to procure one made by either party, so far as the record shows. There was evidence that the plaintiffs repeatedly tried to get a settlement with the companies but failed. Nothing was shown to justify any inference by the defendants that the claims against them were to be abandoned. The defendants maintain that in the absence of an appraisement by arbitrators, or a refusal on the part of the insurance companies to coöperate in bringing one about, the plaintiffs can maintain no action.

A number of courts that have passed directly upon the question hold that under language similar to that here used the submission of the amount of loss to arbitrators is a condition precedent to the bringing of an action on the policy, that the insured is bound to

take the first step in the matter, and that his omission to do so is fatal to a recovery, in the absence of conduct on the part of the insurer amounting to a waiver. This is the view taken in *Graham v. Insurance Co.*, 75 Ohio St. 374, overruling *Fire Insurance Co. v. Finn*, 60 Ohio St. 513. Other courts have held to the contrary upon various grounds, among which are: that the expression "when appraisal has been required" means when one party or the other has demanded it; that the provision concerning arbitration is wholly for the benefit of the insurance company and therefore it must take the initiative; and that the parties are under an equal obligation in the matter, and unless the insurer has taken some step it can not complain that the insured has been equally inactive. The following expressions are illustrative of these views:

"An appraisal was not asked by either party to the policy. It was not, therefore, 'required,' within the meaning of the provisions quoted." (*Lesure Lumber Co. v. Insurance Co.*, 101 Iowa, 514, 523.)

"It is not the duty of a person whose property is insured by a standard policy, such as the one before us, [the same as that here involved; for New York standard form see 1 Fire Insurance as a Valid Contract, Clement, 474] to initiate an appraisal, for the contract makes an appraisal a condition precedent to recovery, only when one 'has been required' by the insurer." (*Chainless Cycle Mfg. Co. v. Security Ins. Co.*, 169 N. Y. 304, 310.)

"This clause of the policy was inserted wholly for the protection of the insurer. . . . If a person for whose benefit a clause in a contract is inserted would have the advantage of it, he must bring himself within its terms, and will not be excused because the other party has likewise failed. Unless the insurer asks for the arbitration or appraisal before suit brought, the failure to appraise is not a defense." (*Continental Ins. Co., &c., v. Vallandingham & Gentry*, 116 Ky. 287, 300, 302.)

"It will be observed that the obligation to procure or demand an arbitration is not, by this clause, in terms

imposed on either party. It is not said that either the company or the insured shall take the initiative in setting the arbitration on foot. The company has no more right to say the insured must do it than the insured has to say the company must do it. The contract in this respect is neither unilateral nor self-executing. To procure a reference to arbitrators, the joint and concurrent action of both parties to the contract in indispensable. The right it gives and the obligation it creates to refer the differences between the parties to arbitrators are mutual. One party to the contract can not bring about an arbitration. Each party is entitled to demand a reference, but neither can compel it, and neither has the right to insist that the other shall first demand it, and shall forfeit any right by not doing so." (*Kahnweiler v. Phenix Ins. Co.,* 14 C. C. A. 485, 489.)

The decisions bearing upon the question are fully collected, classified and reviewed in a note to the later Ohio case in 15 L. R. A., n. s., 1055, 1067-1070. In his conclusion the author of the note says:

"It is apparent from what has been set out in the foregoing note that practically every one of the many principles governing arbitration in insurance as a condition precedent to the maintenance of an action on a policy is unsettled in law. . . . Much of the vexatious litigation is due to abuse of the arbitration agreement by the insurer; but it is now generally held that any bad faith or course of procedure upon the part of the insurer detrimental to the insured will constitute a waiver of such insurer's right to demand compliance or plead noncompliance with the arbitration clause as a defense to any action on the policy." (15 L. R. A., n. s., 1078.)

There is a sense in which the arbitration clause is wholly for the benefit of the company, since it may reject all overtures in that connection without incurring any penalty; practically it has an option to arbitrate or to refuse to do so. (*Kahn v. Traders Ins. Co.,* 4 Wyo. 419, 450, 451.) Fairly and reasonably considered, the purpose of the provision is to enable the company to have the amount of the loss determined out of court—not to give it a means to defeat the claim.

If an arbitration is really desired, no reason is apparent why it might not be had after an action is brought, the proceedings being stayed in the meantime, and the court awarding costs as justice might require. The mere bringing of the action, under such conditions, could work no injury. But if a hard-and-fast rule is to be enforced that the arbitration must precede the taking of the matter into court, then the defendant should be held with some strictness to a performance of all conditions on its own part. In order that there should have been an arbitration in this case it was necessary that the defendants should have chosen an arbitrator. There was no occasion for the defendants to wait for the plaintiffs to act. If the plaintiffs were at fault the defendants were equally so. Since the plaintiffs' action alone could have accomplished nothing, the defendants' neglect was sufficient to have prevented an appraisal. If the defendants cared to. have the amount of the loss settled by arbitration they had abundant opportunity to give expression to their desire in the long interval—over a year— between the fire and the bringing of the action. Their inaction for that period may not unreasonably be regarded as amounting to a waiver. It would not be in furtherance of justice to allow them, after having remained so long silent on the subject, ·to raise the question of arbitration, not for the purpose of procuring an appraisement of the loss, but to defeat a recovery.

The plaintiffs claimed an allowance for attorneys' fees. This the court at first denied, rendering judgment accordingly. After the defendants had served notice of appeal, and at a subsequent term, the court concluded that such fees were recoverable, and made an order allowing them. The defendants complain of this on the ground that the district court, by reason of the appeal, had lost jurisdiction, and on the further ground that the statute does not authorize the recovery of attorneys' fees in this kind of an action.

If attorneys' fees are recoverable it is under a statute authorizing them in certain cases "to be recovered as a part of the costs" (Laws 1897, ch. 142, § 4, Gen. Stat. 1909, § 4263), and it has been held that "the award . . . falls strictly within the category of costs." (*Insurance Co. v. Corbett,* 69 Kan. 564, 572.) The question of the allowance of attorneys' fees is one that ordinarily might be entertained after a judgment has been rendered for the plaintiff. If in this case the previous decision of the question constituted a final adjudication, that should not prevent a review under the situation here presented. If the original ruling had stood the plaintiffs could have asked a reversal thereof in this proceeding. No notice of a purpose to do so was necessary as a matter of jurisdiction. (*Jones v. Lampe,* post.) And the argument in favor of the allowance of attorneys' fees made by the plaintiffs sufficiently challenges the correctness of the original decision, and may be regarded as a presentation of that question. A motion for a new trial on the part of the plaintiffs was not necessary for that purpose.

Whether attorneys' fees should be allowed in this case is a question not free from difficulty. In 1893 the legislature passed a valued-policy law. (Laws 1893, ch. 102.) The first section provided, in substance, that where real estate was insured, and a total loss followed, the amount named in the policy should be conclusively taken to be the true value of the property. The second section made the act applicable to all policies and renewals thereafter written upon real property. The third section authorized the allowance of attorneys' fees upon the rendering of judgment against an insurance company "upon any such policy of insurance." Under this act there was room for doubt whether the phrase "any such policy" referred to any policy covering real estate (as was held in *Hanover Fire Ins. Co. v. Gustin,* 40 Neb. 828), or only to a real-estate policy upon which a total loss had occurred.

Syndicate Co. v. Insurance Co.

In 1897 the act was amended and reënacted in its present form. (Laws 1897, ch. 142, §§ 1-4, Gen. Stat. 1909, §§ 4260-4263.) The changes material to the present inquiry were as follows: A new section, designated as section 2, was added, the substance of which was that it should be the duty of a company insuring real property to place in the policy a correct description of the premises, and that an erroneous description should not defeat a recovery. The original second section was numbered three, and the words "upon real property" were stricken out, making the act in terms apply to all policies of insurance. The original third section, with a few merely verbal changes, became the fourth.

We think it clear that, whatever might be the interpretation of the original act in that regard, the present statute authorizes the allowance of attorneys' fees in an action upon any insurance upon real estate, whether the loss has been total or only partial. If in the original act the words "such policy" referred only to real-estate policies upon which there had been a total loss, it was because the preceding section referred only to that kind of a policy. In the amended act one of the sections preceding that in question refers to all policies upon real estate, and makes a requirement as to their contents, irrespective of the extent of the loss. The words "such policy" in the new fourth section must be regarded as broad enough to include all policies referred to in the preceding sections; in other words, to all insuring real property. This was the view taken in *Spring Garden Ins. Co. v. Amusement Syndicate Co.*, 102 C. C. A. 29. The question whether policies upon personal property were also affected was not involved in that case and need not be determined here.

The policies sued upon here are in a sense written upon real estate; they insure real property rather than personal; they relate to and insure its owner against

.a certain form of loss in case it is injured or destroyed. The company writing such a policy would be required, by the second section of the statute referred.to, to see that the premises were correctly described, and the provisions of that section would prevent an erroneous description from defeating a recovery. We think these policies are written upon real property within the meaning of the second section of the statute, and this being so, they are within the scope of the term "such policies" as used in the third section, and in a successful action upon them the plaintiffs are entitled to recover an attorneys' fee.

The defendants suggest that by afterwards expressly authorizing attorneys' fees in actions on policies insuring personal property (Laws 1911, ch. 205) the legislature in effect said that the earlier statute did not cover that ground. If so, the fair inference is that it regarded all other forms of property insurance as already within the rule, and desired to make the system complete.

The judgment is affirmed as to findings of liability and the rate of indemnity per month, and as to the allowance of the attorneys' fee, but remanded for a determination of the time it would have taken to reconstruct the old building, and the modification of the amount of recovery accordingly.

WEST, J., not sitting.