GEORGE E. CALNON, APPELLEE, v. FIDELITY-PHENIX FIRE INSURANCE COMPANY, APPELLANT.

FILED DECEMBER 30, 1925. No. 23370.

1. **Insurance:** VALUED POLICY: CHARACTER OF PROPERTY. Under section 7809, Comp. St. 1922, it is provided: "Whenever any policy of insurance shall be written to insure any real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assignee, the amount of the insurance written in such policy shall be taken conclusively

to be the true value of the porperty insured and the true amount of loss and measure of damages." A grain elevator approximately 60 feet in height, 29 feet in width, and 33⅒ feet in length, constructed of wood and metal, with a substantial rock-concrete foundation, erected by a tenant upon a railroad right of way under a lease for a definite term containing stipulations for the removal of the building by the tenant at the termination thereof, is to be deemed real estate and to be within the protection of the statute.

2. ———: MORTGAGING OF PROPERTY: EFFECT. Under the statute, the violation of a condition in a fire insurance policy by the mortgaging of the property insured does not invalidate the insurance, unless the breach of contract contributes to the loss. Comp. St. 1922, sec. 7787.

3. Trial: INTEREST. Where, from the verdict and the pleadings, as in this case, it appears that, if plaintiff is entitled to recover at all he is entitled to recover interest, the court should make the computation and cover the amount of interest in the judgment.

APPEAL from the district court for Hall county: BAYARD H. PAINE, JUDGE. *Affirmed in part, and reversed in part.*

*Kennedy, Holland, DeLacy & McLaughlin* and *J. L. Cleary,* for appellant.

*B. J. Cunningham, Prince & Prince* and *A. S. Johnston, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

This is an action prosecuted by the plaintiff, Calnon, against the defendant Fidelity-Phenix Fire Insurance Company upon two policies of fire insurance aggregating $12,000 issued by defendant, covering an elevator building and fixtures therein owned by plaintiff. The amended petition upon which the action was tried is in usual form. The amended answer of the defendant thereto, so far as material to the consideration of this case, after admitting certain facts, alleges that the Union Pacific Railroad Company was the owner of the ground upon which said elevator

building was situated, and that said elevator building was on the Union Pacific right of way, having been constructed there under provisions of a lease with said railroad company requiring the plaintiff to remove said elevator building from the premises upon the termination of the term. The defendant further contends that said elevator building, because of said facts, was personal property, and at date of its destruction was of less than $3,600 value; that it was alleged to be incumbered in the sum of $10,000 by a mortgage "without the consent of the defendant;" and that said fire which caused its destruction originated through the "act, design, procurement, and criminal fault" of the plaintiff. To this amended answer the plaintiff replied. These issues were submitted to the jury, and a verdict was returned for the plaintiff in the sum of $12,000. A motion was thereupon made by plaintiff that interest in the sum of $730.34, being interest at 7 per cent. on $12,000 for the period commencing 60 days after due proof of loss had been furnished by the plaintiff to the defendant, be included in said judgment, and also a motion that a reasonable attorney's fee be taxed in favor of the plaintiff. The court denied the motion for interest, and sustained the motion for the taxing of an attorney's fee which was fixed by order of the court in the sum of $1,200. The defendant appeals from the entry of the judgment and the allowance of the attorney's fee. The plaintiff prosecutes a cross-appeal from the denial of the claimed interest.

The verdict of the jury for the purpose of this case conclusively determined the fact that the building destroyed was not destroyed by fire which originated through the act, design, procurement, or criminal fault on the part of the plaintiff.

The fundamental question that is presented by this case is whether the subject-matter of the insurance was "real property" or "personal property." The court below tried the case on the theory that the property insured was real property. There is no dispute about the physical facts. The building was of the common, small town type of grain

elevator, approximately 60 feet in height, 29 feet in width, and 33 4/10 feet in length, constructed of wood and metal, and resting upon a substantial "rock-concrete" foundation with a steel pit constructed thereunder. It was described in the insurance policies as the "electric power, shingle roof, cribbed frame elevator building, including foundations, * * * and all permanent fixtures belonging to and constituting a part of said building; * * * known as the Omaha elevator," and situated on the Union Pacific right of way 100 feet east of the Alda depot on the south side of the main-line tracks.

Section 7809, Comp. St. 1922, provides:

"Whenever any policy of insurance shall be written to insure any real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assignee, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages."

This act is remedial in character. To ascertain and enforce the intent of the legislature is admittedly a cardinal rule in the construction of the statutes. In determining the question of legislative intent, reference may be had to the occasion and necessity of the law, and the words of the act may be interpreted in the light of the general object of the statute. In other words, in construing the provision before us, the court will give consideration to its policy, to the mischief to be remedied, and give it such an interpretation as appears best calculated to advance its objects by not effectuating the design of the legislature. *Gran v. Houston*, 45 Neb. 813; *Buckmaster v. McElroy*, 20 Neb. 557; *McIntosh v. Johnson*, 51 Neb. 33. Indeed, in the *Buckmaster* case, above cited, Judge Cobb cited approvingly the case of *Dean and Chapter of St. Peter, York, v. Middleborough*, 2 Y. & J. (Eng.) * 196, to the effect that—"It is by no means unusual in construing a remedial statute to extend the enacting words beyond their natural import and effect,

in order to include cases within the same mischief." Or, as stated in 36 Cyc. 1175: "Where necessary to effectuate the legislative intent, remedial statutes will be construed to include cases within the reason, although outside the letter." See, also, *Traudt v. Hagerman*, 27 Ind. App. 150; *Rural Independent School District v. New Independent School District*, 120 Ia. 119; *Gaster v. Estate of Gaster*, 92 Neb. 6.

The statutory language which we are seeking to construe in the instant case is the term "any real property." Is its meaning (1) the thing corporeal, or (2) the estate or interest which one may have therein? The language employed in the policies in suit in express terms describe as the subject of insurance "the thing corporeal," the elevator. The defendant, however, cites 22 R. C. L. 65, sec. 40, which is as follows:

"Where a person erects buildings on leased premises under an agreement in the lease that he may remove them, or places machinery in buildings under a similar agreement, the buildings and machinery follow the term and partake of its character as a chattel real. A term for years while denominated a chattel real is not, when speaking with legal accuracy, considered real estate, but on the contrary it is personal property, whatever might be its duration in years, whether for one or twenty, or ninety-nine years."

A consideration of the above citations leads to the conclusion that the author has in mind rather the quantity and quality of the estate which is possessed in the land to the exclusion of the land itself. And it would seem that a house permanently fixed and immovable, though leased for 99 years, would be as much, if not more, within the policy of the Nebraska act than a freehold of which the same house formed a part, but which was limited for the life of the possessor, which in the natural order of things will terminate within a decade. It thus becomes necessary to determine the purpose of the words "any real property" used in the Nebraska statute in view of its remedial character and especially in view of the manifest policy therein indicated.

Were the legislators concerned only with the considera-
tion of matters of title or of rights and interests attaching
to or adhering to real estate which at common law amounted
to at least an estate of freehold, or was it their intention by
the term "real property" to designate something corporeal,
tangible, and which might be inspected and which was the
object of the senses?  It is to be remembered in this con-
nection that the act in question was called forth by methods
followed by many of the insurance companies of Nebraska
in carrying on their business.  These methods were not ap-
parently actuated by good faith, and practices were fol-
lowed which were characterized by deception and deceit,
and which resulted in the companies participating therein
in securing premiums on the basis of a valuation fixed by
the company itself, continued as long as possible, but which
was promptly repudiated in the event of total loss.  It
seemed but equitable that where property was of a sub-
stantial nature, permanent, fixed, and immovable, which
might be inspected and which was not subjected to sudden
change in condition when insured for a consideration based
upon a certain valuation, and after due inspection by the
insurer, the amount which should be paid, in the event of
total loss, is the amount stated in the policy.  With respect
to the reason for the passage of this law, Judge Sullivan of
this court in the case of *Lancashire Ins. Co. v. Bush*, 60
Neb. 116, said:

"What reason existed at the time of the adoption of the
valued policy law to induce the legislature to segregate in-
surers of real estate from other litigants and to subject
them to burdens from which other unsuccessful suitors are
exempt?  The reason is not far to seek.  It is a matter of
common knowledge that corporations engaged in the busi-
ness of insuring real estate have been long accustomed to
vexatiously and oppressively resisting payment of claims
arising under their policies.  The reports of this court bear
abundant evidence to the fact that no other class of liti-
gants has so persistently endeavored to escape liability from

their contract obligations by interposing technical and unconscionable defenses to actions instituted against them."

From the nature of the situation the attention of the legislators was directed primarily to things real, that is, such things as are permanent, fixed, and immovable, and therefore it is in the sense of the things corporeal in which the words "any real property" are to be considered as used in the statute. It is to be noted that the word "any" is employed in this connection. This word implies unlimited choice as to the particular unit, number, or quantity. It follows that the words "any real property" are perfectly ample and cover and include "real estate" or "real property" as may be defined by common law or by statute duly passed.

Section 5809, Comp. St. 1922, reads as follows: "The term 'real property,' or 'real estate' and 'lands,' when used in this act, except as otherwise provided, shall include * * * all buildings, fixtures, improvements, * * * and privileges pertaining thereto."

Section 5586, Comp. St. 1922, reads as follows: "The term 'real estate,' as used in this chapter, shall be construed as coextensive in meaning with 'lands, tenements and hereditaments,' and as embracing all chattels real, except leases for a term not exceeding one year."

The chapter referred to in the last section is the chapter on real property, governing definitions, conveyances, occupying claimants, actions to quiet title, escheats, abstracters, Torrens system, and miscellaneous provisions. These provisions construed with the term "any real estate" as set forth in the valued policy act plainly indicate that under the law of Nebraska the elevator in controversy in this suit must be held to be real property, for it is plainly within the express words of the act itself. It is a remedial statute, and the construction given is demanded by the policy of the act, as well as by the mischief sought to be remedied. It is the only construction which can be given it which effectuates the design of the legislature. It is not even necessary in so doing that the words of this

statute be extended beyond their natural import and effect to include this case. It is plainly within the reason of the legislation involved. This conclusion is not without support of authority. In the case of *Orient Ins. Co. v. Parlin-Orendorff Co.*, 14 Tex. Civ. App. 512, the court, speaking of a warehouse similarly situated to the one here in litigation, say in part:

"But it is insisted that here the house was personal property, and is excluded by the terms of the statute. Personal, in its general sense, means simply movable, transitory; personal property, that which may be carried about with the person. It has reference to the real character of the property, and not to the title by which it is held. In this sense, a dwelling-house is not embraced within the meaning of the term personal property. To give the statutory term its general signification, the object of the statute will be accomplished; to give its technical legal sense, the evil intended to be remedied will in part still prevail, and without any good reason to support it. We are of opinion that the statute should be construed to embrace houses, without reference to the question of the fee simple title to the land."

True, appellant cites in support of his position the cases of *Sharp v. Niagara Fire Ins. Co.*, 164 Mo. App. 475, and *Millis v. Scottish Union & Nat. Ins. Co.*, 95 Mo. App. 211. It is to be observed that the cases cited are from the intermediate court of appeals of Missouri, and the decisions are not in accord with the manifest spirit of the enactment under consideration in this case.

The defendant, as further ground for reversal, insists that because of a certain unfinished transaction, having in view the ultimate execution of a chattel mortgage by the assured to the American State Bank or its receiver, to cover the property in question, the same must be deemed to have been mortgaged to secure the payment of the sum of $10,000 and that thereby the insurance was invalidated. He cites *Madsen v. Farmers & Merchants Ins. Co.*, 87 Neb. 107, as sustaining his contention. In the case cited by de-

fendant the policy in suit was issued October 15, 1907, the loss occurred December 1, 1907. It is to be noted, however, that in 1913 the legislature adopted section 3187, Rev. St. 1913, which now appears as section 7787, Comp. St. 1922. This legislative act modified the rule announced in the decision of this court in *Madsen v. Farmers & Merchants Ins. Co., supra,* and in construing this legislation in the case of *Security State Bank v. Aetna Ins. Co.,* 106 Neb. 126, this court announced the rule to be:

"Under the statutes of Nebraska, the violation of a condition in a fire insurance policy by the mortgaging of insured chattels does not invalidate the insurance, unless the breach of contract contributes to the loss. Rev. St. 1913, sec. 3187."

Assuming, but not deciding, that the effect of the transaction referred to by defendant was to create a chattel mortgage, it is not alleged in defendant's amended answer that the breach of contract on the part of the assured in any manner contributed to the loss, nor is there any evidence in the record, especially in view of the verdict of the jury, which would in any manner sustain such an allegation, had it been made. It therefore follows that this objection cannot be sustained.

The determination that the property in suit was, under the provisions of the valued policy law of Nebraska, real estate sustains plaintiff's right to have a reasonable attorney's fee taxed for his benefit. As to the amount of the attorney's fee allowed, the transcript discloses that on January 5, 1923, hearing was had on motion and evidence taken on question of attorney's fee. This evidence is not preserved in the bill of exceptions. This omission would of itself necessarily preclude a review by this court of the question of the reasonableness of the amount allowed. It appears, however, that it does not exceed 10 per cent. of the total recovery, exclusive of interest. Such an allowance, in view of the facts in this record, is not deemed **excessive.**

The plaintiff presents by a cross-appeal the refusal of the district court to amend its judgment entered in this case by incorporating therein the additional sum of $730.34, the same being interest due on the $12,000 recovered from January 10, 1922, until the date of the rendition of the verdict. In this connection it is to be remembered that the judgment sought to be corrected was entered November 23, 1922, the same being one of the days of the regular November term of court. On December 21, 1922, within said November term, the plaintiff filed a motion "to include interest in the judgment" amounting to $730.34. This motion was denied on January 6, 1923 (but still within the November term). To reverse this order the plaintiff prosecutes his cross-appeal. It may be said that under the facts disclosed by the record the plaintiff was, by law, entitled to the sum of $12,000, with interest from January 10, 1922, to November 23, 1922. *Peterson v. Mannix,* 2 Neb. (Unof.) 795; *Estate of Bennett v. Taylor,* 4 Neb. (Unof.) 800. Upon presentation of the motion to include interest, the court was empowered to do either one of two things: (a) Amend the verdict by adding interest and including it in the amount of the judgment rendered thereon; or (b) make the computation and cover the amount of interest in the judgment without any amendment to the verdict whatsoever. The latter seems to be indicated by this court as proper practice in such cases. *Wiruth v. Lashmett,* 85 Neb. 286; *Minot v. City of Boston,* 201 Mass. 10, 25 L. R. A. n. s. 311, 314, and note; *McAfee v. Dix,* 91 N. Y. Supp. 464; *Marsh v. Kendall,* 65 Kan. 48; *Jackson v. City of Brockton,* 182 Mass. 26; *Fletcher Bros. v. Nelson,* 6 N. Dak. 94. It follows therefore that the district court erred in overruling the application of the plaintiff for the inclusion of said sum of $730.34 in the judgment rendered in this case.

For the reasons stated the judgment entered in this cause in favor of the plaintiff for the sum of $12,000 and attorney's fees in the sum of $1,200 is affirmed subject to be corrected by the addition of $730.34 interest, and the

judgment of the district court overruling application of plaintiff for the inclusion of said sum of $730.34 as interest is reversed and the cause remanded to the district court for further proceedings in compliance with this opinion.

AFFIRMED IN PART, AND REVERSED IN PART.

Note—See Fire Insurance, 26 C. J. secs. 307, 453.