Hugh MAGRATH, Appellant,

v.

MECHANICS & TRADERS INSURANCE COMPANY, Appellee.

No. 5615.

United States Court of Appeals
Tenth Circuit.

Oct. 5, 1957.

Jacob A. Dickinson, Topeka, Kan. (Cole & Cole, Garnett, Kan., David Prager, William W. Dimmitt, Jr., and Sam A. Crow, Topeka, Kan., on the brief), for appellant.

Charles Rooney and C. K. Sayler, Topeka, Kan. (L. M. Ascough, John A. Bausch and Charles Rooney, Jr., Topeka, Kan., on the brief), for appellee.

Before BRATTON, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

PHILLIPS, Circuit Judge.

Mechanics & Traders Insurance Company, a corporation,[1] brought a declaratory judgment action under 28 U.S.C. § 2201 against its insured, Hugh Magrath, a resident of Harris, Kansas, seeking an adjudication with respect to its liability on a certain fire and lightning insurance policy issued by it to Magrath.

There is no substantial dispute as to the facts. Hugh Magrath was the owner of a certain tract of land on the edge of Harris, Kansas, and desired to locate thereon a home. One Bill Graham obtained authority from his parents, the owners of an unoccupied seven-room, two-story dwelling house, situated on Lots 7 and 8, Block 15, Harris, Anderson County, Kansas,[2] several blocks distant from the Magrath property, to sell such house to Magrath and, in the latter part of May, 1955, entered into an oral contract with Magrath for the sale. Under the terms of the contract, Magrath agreed to purchase the house from Graham and to move it from Block 15 to his own property to be placed there on a foundation-basement to be built in part, at least, by Bill Graham and to pay $300 for the house and $300 for labor to be performed by Graham. While the time for moving the house was not specifically fixed by the agreement, it was implicit in the agreement that it was to remain on Block 15 until the basement and foundation on the Magrath property was completed and then moved to the Magrath property. At the time of the sale Magrath was about to be married. He and Bill Graham had been lifelong friends and in fixing the price Bill Graham was motivated by the fact that he desired the house to be in part a wedding present to Magrath. On June 17, 1955, Magrath gave Graham his check for $600, which check Graham still held at the time of the trial, the check having never been presented for payment by Graham and there being some question as to whether or not Magrath had sufficient funds to cover it.[3]

The house in question was about 50 years old. It had outside dimensions of approximately 18′ x 36′ and was a two-story frame house in reasonably good condition. Bill Graham's parents had acquired the house and lots in 1947 by paying off a $270 mortgage.

1. Hereinafter called the Insurance Company.

2. Hereinafter referred to as Block 15.

3. This fact is not an issue in this appeal, since the trial court found that Magrath had an insurable interest in the property in question and that finding is not challenged.

On June 2, 1955, Magrath insured the house with the Insurance Company against fire and lightning in the amount of $6,000. Magrath paid and the Insurance Company accepted as the premium for the policy, $49.20. The insurance policy, as set out fully in the record, in its important aspect, provided:

"In Consideration * * * OF the premium above specified, this Company, for the term of One Year from June 2, 1955 * * * to June 2, 1956 * * * to an amount not exceeding the amount(s) above specified, [$6,000], does insure Hugh E. Magrath and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property * * *."

The circumstances surrounding the purchase of the insurance policy deserve comment. The Insurance Company's agent, one James Anderson, contacted Magrath about insurance on the house which he, Anderson heard Magrath had purchased. Anderson suggested that the house be insured at two-thirds of the replacement value. Magrath told Anderson that he was going to move and remodel the house. Anderson said that he had seen the house and suggested that it be insured for $7,000. Magrath thought that amount was excessive and $6,000 was finally agreed by the parties as the proper amount.

The house caught fire in the nighttime and was totally destroyed by fire on June 21, 1955, the fire occurring while the house was still firmly attached to its foundation on Block 15, no steps having been taken by that time to effect its removal to the Magrath property.

Prior to the filing of its action, the Insurance Company offered Magrath $600 in full settlement of its liability under the policy, which offer was refused. The Insurance Company then filed its action in the United States District Court for the District of Kansas, which resulted in a decision by that court that the Kansas Valued Policy Law, Kansas G.S.1949, § 40–905, did not apply, and an award to Magrath of $1,500; $1,000 as the reasonable market value of the house at the time and place of destruction by fire and $500 as attorney's fees under the provisions of Kansas G.S.1949, § 40–908. Magrath has appealed, contending that the trial court erred in not applying the Kansas Valued Policy Law, supra, and that the value of the house should have been adjudged to be $6,000, the stated amount in the policy.

The Kansas Valued Policy Law, Kansas G.S.1949, provides:

"40–905. Whenever any policy of insurance shall be written to insure any improvements upon real property in this state against loss by fire, tornado or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured, and the true amount of loss and measure of damages, and the payment of money as a premium for insurance shall be prima facie evidence that the party paying such insurance is the owner of the property insured: *Provided,* That any insurance company may set up fraud in obtaining the policy as a defense to a suit thereon."

In excluding the application of the above statute the trial court concluded as a matter of law that the house in question was not, at the time of its total destruction by fire, an "improvement upon real property," within the meaning of § 40–905, supra.

Therefore, the fundamental and single question presented by this appeal is whether or not Magrath's house was an "improvement upon real property" at the time of its total destruction by fire on June 21, 1955, while situated on the property owned by another, during the life of a contract providing for the removal of the house to a different location, after the foundation at the new location

was completed, all within the meaning of the Kansas Valued Policy Law, Kansas G.S.1949, § 40–905.

Prior to 1897, the Valued Policy Law of Kansas provided, in Chapter 102, Laws of 1893:

"Section 1. Whenever any policy of insurance shall be written to insure *any real property* in this state against loss by fire, tornado, or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured, * * *." (Italics ours.)

Chapter 102, Laws of 1893, above quoted in part, was repealed and replaced by Chapter 142, Laws of 1897, which, being identical with the above-quoted portion of the 1893 law in all other respects, simply changed the phrase "any real property" to "any improvements upon real property," a change which has been carried out through the intervening years and which statute is identical with the present Valued Policy Law of 1949, previously quoted.

It seems probable, in observing this change, that the Kansas legislature, rather than intending to restrict or enlarge the scope of the law, meant and intended only to express itself in more definitive statutory language, delineating clearly that "any improvement" on realty was the insurable property within the meaning of the statute, for, in the last analysis, the statute must refer to something corporeal, tangible and subject to inspection on the real property, rather than the real property itself.[4]

In the trial below, counsel for the Insurance Company apparently placed some reliance in the Kansas case of British-America Assurance Co. v. Bradford, 60 Kan. 82, 55 P. 335, as au-

thority for the proposition that under the 1893 law the Kansas Supreme Court applied the Valued Policy Law to real property in its most strict sense. We do not so read the Kansas decision. Moreover, we think the 1897 amendment clearly expressed a contrary legislative intent. Furthermore, if the use of the definitive phrase "any improvements upon real property" is construed to obviate questions of property "metamorphosis," then the reasons justifying the existence of a valued policy law, as discussed later, are better served. This is especially true in those situations where external or ancillary agreements with respect to property do have or should have no relation to the insuring agreement, which has as its purpose the protection of property, whatever the legal character, at a certain valuation, for a certain consideration. The purposes of a valued policy law, it should be remembered, are: (1) to prevent overinsurance by requiring prior evaluation; (2) to avoid litigation by prescribing definite standards of recovery in case of loss;[5] (3) to prevent impairment of the general values of the commonwealth; and (4) to preserve homes and insure their rebuilding when destroyed.[6]

In upholding the constitutionality of the 1893 Kansas statute permitting attorney's fees in suits on fire insurance policies, Laws of 1893, Chapter 102, § 3, the Supreme Court of Kansas, in British-America Assurance Co. v. Bradford, supra, said:

"Fire insurance has come to be a business public in its nature. It has come to be 'clothed with a public interest.' It is therefore properly a subject of legislative regulation. The state is interested in the preservation of the property of its citizens, that the general values of the commonwealth may not be impaired. Especially it is interested in the

4. Calnon v. Fidelity-Phenix Fire Ins. Co., 114 Neb. 194, 206 N.W. 765.

5. Nathan v. St. Paul Mutual Ins. Co., 243 Minn. 430, 68 N.W.2d 385.

6. British-America Assurance Co. v. Bradford, 60 Kan. 82, 55 P. 335, 336.

preservation of its homes, and their rebuilding when destroyed. * * "

It seems to us that in view of this general legislative purpose of the statute, the 1897 change is a significant indication of the meaning the Kansas legislature intended to impart to the words "any real property" as contained in the 1893 law.

■ An "improvement" on real property has been defined variously as "that by which the value of anything is increased, its excellence enhanced, or the like," or "an amelioration of the condition of property affected by the expenditure of labor or money, for the purpose of rendering it useful for other purposes than those for which it was originally used, or more useful for the same purposes."[7] Of course, personal property as such is not normally considered to be an improvement upon the real property whereon it is located. Personal property is usually so categorized because of its moveability,[8] its tangible character[9] and its unattached situation. A building, on the other hand, is normally considered to be real property[10] and an improvement upon the land of its situs. This is not to say, however, that a building may never become or be considered personal property.[11] However, to hold that the dwelling house here in question, as of the time of the oral contract, became the personal property of Magrath and ceased at that time to be real property, and further, on becoming Magrath's personal property ceased to be an improvement on Block 15, would, in our opinion, defeat the meaning and purpose of the Valued Policy Law.

Fidelity-Phoenix Fire Ins. Co. v. O'Bannon, Tex.Civ.App., 178 S.W. 731, 733, involved a construction of the Texas Valued Policy Statute V.A.T.S. Insurance Code, art. 6.13. In that case the insured owned certain land and a dwelling house situated thereon in the City of Sherman. On December 21, 1912, he sold and conveyed the land to the trustees of a school district. He did not sell the house, but retained ownership thereof and agreed to move it from the land within a reasonable time and not later than February 1, 1913. The house was destroyed by fire on January 17, 1913, before it had been removed. Likewise, in the instant case, title to the land was in the Grahams, but it was implicit in the contract for the sale of the house that the house should remain on Block 15 until a basement and foundation on the Magrath property had been completed and the basement and foundation were to be constructed by Graham. The court held that the Texas Valued Policy Statute applied and in construing the statute said:

"The Court of Civil Appeals had occasion to construe the statute in Orient Insurance Co. v. Parlin & Orendorff Co., 14 Tex.Civ.App. 512, 38 S.W. 60. The property covered by the policy sued upon in that case was a house constructed by the plaintiffs on land they had leased from the owner thereof for a term of five years. * * * 'It is insisted here that the house was personal property, and is excluded by the terms of the statute. "Personal", in its general sense, means simply "movable", "transitory";

7. Stevens v. City of Port Huron, 149 Mich. 536, 113 N.W. 291, 297; 1 Bouv.Law Dict., Rawle's Third Revision, p. 1517.

8. Orient Ins. Co. v. Parlin-Orendorff Co., 14 Tex.Civ.App. 512, 38 S.W. 60; 2 Bouv. Law Dict., Third Revision, pp. 2576-2577, 2816.

9. Board of County Commissioners of Kingman County v. Leonard, 57 Kan. 531, 46 P. 960, 34 L.R.A. 810; Hunt v. Board of Com'rs, 82 Kan. 824, 109 P. 106.

10. Amusement Snydicate Co. v. Prussian Nat. Ins. Co., 85 Kan. 367, 116 P. 620, 624; Calnon v. Fidelity-Phenix Fire Ins. Co., 114 Neb. 194, 206 N.W. 765.

11. Buffalo Ins. Co. v. Bommarito, 8 Cir., 42 F.2d 53, 56, 70 A.L.R. 1211; Central Branch Railroad Company v. Fritz, 20 Kan. 430; Lawson v. Southern Fire Ins. Co., 137 Kan. 591, 21 P.2d 387; 22 Am. Jur. 727; Bemis v. First Nat. Bank, 63 Ark. 625, 40 S.W. 127, 128; 2 Bouv. Law Dict., Third Revision, p. 2817.

"personal property" that which may be carried about with the person. It has reference to the real character of the property, and not to the title by which it is held. In this sense, a dwelling house is not embraced within the meaning of the term "personal property." To give the statutory term its general signification, the object of the statute will be accomplished; to give its technical legal sense, the evil intended to be remedied will in part still prevail, and without any good reason to support it. We are of opinion that the statute should be construed to embrace houses, without reference to the question of the fee-simple title to the land.' We are of the same opinion * * *."

And, in Calnon v. Fidelity-Phenix Fire Ins. Co., 114 Neb. 194, 206 N.W. 765, 766, the Supreme Court of Nebraska, in construing the Nebraska Valued Policy Statute, Comp.St. 1922, § 7809, which was identical with the Kansas Valued Policy Law of 1893, citing with approval Orient Insurance Co. v. Parlin & Orendorff Co., supra, said:

"This act is remedial in character. To ascertain and enforce the intent of the Legislature is admittedly a cardinal rule in the construction of the statutes. In determining the question of legislative intent, reference may be had to the occasion and necessity of the law, and the words of the act may be interpreted in the light of the general object of the statute. * * *

* * * * *

"Were the legislators concerned only with the consideration of matters of title or of rights and interests attaching or adhering to real estate * * *, or was it their intention by the term 'real estate' to designate something corporeal, tangible, and which might be inspected and which was the object of the senses? It is to be remembered in this connection that the act in question was called forth by methods followed by many of the insurance companies * * *. These methods were not apparently actuated by good faith, and practices were followed which were characterized by deception and deceit, and which resulted in the companies participating therein in securing premiums on the basis of a valuation fixed by the company itself, continued as long as possible, but which was promptly repudiated in the event of total loss. * * * *"

With the rationale of these cases we are in agreement. Valued policy laws should be construed in the light of their object and purpose. They are remedial statutes, designed to prevent certain evils. To hold that the dwelling in the instant case falls without the Kansas statute would be a failure to recognize this remedial character and the legislative intent and purpose.

The fact that the amount stated in the policy is substantially in excess of the market value of the improvement upon real estate, standing alone, is no justification for denying an application of the Kansas Valued Policy Law.

It is our conclusion that the dwelling in this case falls within the phrase "any improvement upon real property," within the intent and meaning of the Kansas Valued Policy Law, Kansas G.S.1949, § 40–905. Accordingly, the decision of the trial court is reversed and the case remanded with instructions that judgment be entered for Magrath in the stated amount of the policy and for a reasonable sum as attorney's fees.