**IOWA NATIONAL MUTUAL INSURANCE COMPANY, an Insurance Corporation, Appellant,**

v.

**CITY OF OSAWATOMIE, KANSAS, a Kansas Municipal Corporation, Appellee.**

**No. 71–1330.**

United States Court of Appeals, Tenth Circuit.

April 21, 1972.

Glenn E. McCann, Kansas City, Mo., and Hylton Harman, Kansas City, Kan., for appellant.

Robert E. Fabian, Kansas City, Kan., McAnany, Van Cleave & Phillips, Kansas City, Kan., and Willis H. McQueary, Osawatomie, Kan., for appellee.

Before SETH and BARRETT, Circuit Judges, and MECHEM,* District Judge.

MECHEM, District Judge.

This action is before this court by reason of diversity of citizenship. It initiated as a declaratory judgment action pursuant to 28 U.S.C. § 2201 by Iowa National Insurance Company, appellant, called the Company, against the City of Osawatomie, Kansas, appellee, called the City, to determine the Company's liability to the City under a policy of fire and extended coverage insurance issued by the Company on January 1, 1966 insuring the City's utility plant and its contents which were damaged by fire on July 8, 1967.

The Company made a settlement offer of $25,000 which was rejected by the City on October 18, 1967. On October 19, 1967, the Company filed its action. The City counterclaimed demanding damages and costs, including reasonable attorney's fees.

The case was tried before the District Court for the District of Kansas without a jury. On June 17, 1970, the Court entered as judgment its Findings of Fact and Conclusions of Law in which the City prevailed on its counterclaim and was awarded $728.00 for damage to the structure and $60,217.66 for damage to the contents, plus costs. The Company filed a motion for a new trial and motion to amend and supplement the Court's findings of fact and conclusions of law. The Court by its order of February 4, 1971 denied the Company's motions and granted the City's motion for allowance of attorney's fees. The Company here appeals from the final judgment and order of the court.

Prior to January 1, 1966, the inception date of the policy, the Company and the City through their agents had agreed that the utility plant had an actual cash value of $600,000.00 and that the contents and equipment located therein had an actual cash value of $575,000.00. The policy as issued, insured the building in the amount of $540,000.00,[1] and the contents in the amount of $517,500.00.[2] It provided that the percentum of coinsurance separately applicable to the building and the contents thereof would be 90%. At the inception of the policy therefore, it was the intention of the City to have insurance with the Company to the extent of 90% of the actual cash value of each item and it was agreed between the City and the Company's agents that the policy dollar amount was 90% of value so as to satisfy the coinsurance requirements.

The coinsurance clause of the policy provided: "Coinsurance Clause (This Clause void unless a percentage is specified in the appropriate space on the first page of this policy):

In consideration of the rate and (or) form under which this policy is written, it is expressly stipulated and made a condition of this contract that the Insured shall at all times maintain contributing insurance on each item of property cov-

---

* Of the District of New Mexico, sitting by designation.

1. Building—$600,000.00 at 90% = $540,000.00

2. Contents—$575,000.00 at 90% = $517,500.00

ered by this policy to the extent of at least the percentage specified on the first page of this policy of the actual cash value at the time of the loss and that failing to do so, the Insured shall to the extent of deficit bear his, her or their proportion of any loss. * * *

If the policy be divided into two or more items, the foregoing conditions shall apply to each item separately."

If there were no change in circumstances, the condition set forth in the coinsurance clause would have been met, the City would not be required to bear a proportion of any loss and therefore, it could recover in full any partial loss it might sustain up to the limits of the policy. However, subsequent to the issuance of the policy the City entered into contracts with certain contractors and suppliers for an addition to the insured building and for the installation of new equipment and machinery therein. The sum of the total contract prices for the building portion of the new addition exceeded $379,000.00. The sum of the total contract prices for the sale and installation of the equipment and machinery exceeded $672,000.00.

The policy contained a clause relating to alterations and repairs which provided:

Alterations and Repairs Clause:

"Permission granted for alterations and repairs to any building herein described and for construction of additions which attach to and communicate with such building * * * this policy * * * if covering on building(s) or on the Insured interest in improvements and betterments is extended to cover such alterations, repairs and attached and communicating additions during the period of construction and after completion, including building materials and supplies therefor while on the described premises or within 100 feet thereof and if covering on contents is extended to cover such contents as are covered un-

der this policy in such attached or communicating additions."

On July 8, 1967, when the policy was in full force and effect with limits of $540,000.00 for the building and $517,500.00 for the contents, a fire occurred which damaged a portion of the original building and its original contents. The fire was confined to the original plant and its contents as opposed to the building addition and the contents being installed so that the property destroyed was the precise same property identified and covered against fire loss in the policy.

On the day of the fire the City, with one minor exception, had retained approximately 10% of the total contract price on each of the contracts covering the addition and the new equipment which was to be paid upon final completion, inspection and acceptance by the City of the work and installation.

Construction and installation work was finally completed, tested and accepted, final payments were made and releases were given to the contractors by the City on various dates subsequent to the date of the fire.

At the trial, the Company argued the application of the Alterations and Repairs Clause and contended that the City had failed to maintain contributing insurance on the building to the extent of at least 90% of the actual cash value of the building at the time of loss, because the actual cash value included the agreed value of $600,000.00 plus the value of the new addition. Similarly, the Company contended that the City had failed to maintain contributing insurance on the contents to the extent of at least 90% of the actual cash value of the contents at the time of loss, because the actual cash value included the agreed value of $575,000.00 plus the value of the machinery and equipment installed in the new addition. Under the Company's interpretation, the City would be required to bear a proportion of the loss incurred on the building and on the contents.

The City argued that the Alterations and Repairs Clause was not applicable. The City's position was that neither the addition to the structure nor the equipment being installed was complete, that such addition and equipment was still under the possession and active control of the various contractors and vendors, that it had not approved and accepted the work and therefore, such addition and equipment did not belong to the City so as to be covered by the policy at the time of the fire and loss. Hence, the City asserted, the value of the addition, equipment and contents should not have been combined with the value of the original structure and contents for the purpose of determining whether or not the City, at the time of the July 8, 1967 fire loss, had satisfied the 90% coinsurance clause requirement.

The trial court found that Fixley, the soliciting agent of the Company, who had negotiated and arranged with the City for placement of the policy, had been informed by Schrader, the City Manager, about the City's contracts for new installations and knew that the contractors were required to carry adequate insurance on such new installations. The court also found that the soliciting agent had made several inquiries of the City in 1966 and 1967 as to when final acceptance and payment would be made to the various contractors and had counselled the City Manager during these inquiries to notify him at such times of final completion so that he (Fixley) could add additional insurance to the policy.

The trial court determined that the City had relied on Fixley's statements. As a result, it held that the Company was estopped from applying the coinsurance clause to erode the City's recovery for a partial loss by computing the actual cash value of the insured property to include the agreed value on the original structure plus the value of the addition and the agreed value of the contents plus the value of the new installations.

We reject the Company's contentions that the City failed to sustain its burden of proof and failed to make a submissible case of estoppel. The record reflects that Fixley did not expressly tell Schrader that the new equipment and construction would not be included for the purpose of determining the City's compliance with the coinsurance clause of the policy, and did not specifically mention the coinsurance clause in any of his conversations with Schrader, however, the implication of his statements to Schrader was unmistakable. It was that no additional insurance would be necessary to maintain the City's full protection under its policy until the City accepted and made final payment for the work under contracts. Although Fixley was available at the trial, the Company did not call him to testify in rebuttal of the City's evidence regarding his representations or the City's reliance thereon.

We concur in the expression of Kansas law made by the trial court on this point that an insurance company's soliciting agent may bind the company by his representations which are relied on and acted upon by the insured. Nichols v. Commonwealth Casualty Co., 113 Kan. 484, 214 P. 1111 (1923). The trial court's findings of fact on the estoppel issue are sustained. It is well established in this circuit that the findings of a trial court sitting without a jury will be set aside only on a clear showing of error. United States v. McCain, 118 F.2d 479 (10th Cir. 1941). Butler Paper Company v. Business Forms, Ltd., 424 F.2d 247 (10th Cir. 1970), Federal Rules of Civil Procedure Rule 52(a). No such error is reflected here.

With regard to calculation of the City's loss, the parties stipulated that the cost of repainting and cleaning up the structural part of the building was $728.00 and on this item there is no issue. There was however, disagreement as to the "actual cash value" of the contents destroyed by the fire. The Company's expert estimated reasonable market value at between $40,000.00 and $45,000.00 but he testified that it would have been impossible to replace the damaged equipment with identical gear.

The City's expert testified that the cost of repair was $72,000.00. The switch gear which had been damaged in the fire was rated at 7,500 volts. The replacement equipment had a capacity of 15,000 volts. The old switch gear had a life expectancy of forty years while the new had an expectancy of sixty years.

■ The parties had stipulated and the trial court found that on January 15, 1968, Transamerican Constructors and Mid-State Armature Works completed the outdoor substation which was substituted for the inside substation that had been damaged in the fire and completed repairs to certain equipment in the building, all at a cost of $60,417.66. We find no merit in the Company's contention that the trial court erred in determining the actual cash value of the contents destroyed to be $60,417.66, diminished by a $200.00 deductible.[3]

The Company would construe "actual cash value" in the policy to contemplate replacement cost to the City, less deduction of depreciation and obsolescence factors, including consideration of any betterment of the City's position by the equipment replaced. The City claims that depreciation of the original damaged equipment should not be a factor deducted from actual cost because it was able to get better, new-type equipment at significantly less cost than the best estimate of replacement cost of substan-

tially similar equipment. The trial court found and we agree:

"The fact that the replacement made may have put the City in a more advantageous situation as to newer equipment with greater generating capacity at less cost than it was estimated it would have cost to place it in a substantially identical position as to such equipment is not a factor to be balanced in the insuror's favor since such actual cost was considerably less than estimated cost for placing the City in a substantially identical position."[4]

A power plant and its equipment and contents incorporated into a municipally-owned system, being seldom bought, or sold, has no established "market value" or "cash value" in the commercial market place.

Relying on Kansas law as stated in City of Wichita v. Unified School District 259, 201 Kan. 110, 439 P.2d 162 (1968), a case involving the valuation of public property in condemnation, the trial court held that the rule of equivalent replacement is validly applied to determine the value of public property when evidence of fair market value is not available.

■ The final issue in this appeal concerns the allowance of attorney fees granted by the trial court. The Company claims that two Kansas statutes, K. S.A. 40–256[5] and K.S.A. 40–908,[6] allow-

---

3. The policy contained an Electrical Apparatus Clause which provided for a $200.-00 deductible for direct loss to electrical equipment caused by electricity and ensuing fire.

4. Findings of Fact, Conclusions of Law and Comment of the Court, Conclusion of Law No. 6, Appendix, Vol. 1, p. 30.

5. K.S.A. 40–256 provides: "Attorney fees in actions on insurance policies; exception. That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40–201, and including in addition thereto any reciprocal or inter-insurance exchange on *any policy or certificate of any type or kind of insurance, if it ap-*

*pear from the evidence that such company or exchange has refused without just cause or excuse* to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs: Provided, however, That when a tender is made by such insurance company or exchange before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed." (Emphasis added.)

6. K.S.A. 40–908 provides: "Attorney fees in certain actions. That in all actions

ing attorney fees in actions wherein judgments are issued against insurance companies are conflicting. It is also asserted that K.S.A. 40–908 violates the Fourteenth Amendment of the United States Constitution because it arbitrarily discriminates against insurance companies issuing fire, tornado, lightning and hail insurance and deprives such companies of property without due process of law.

The trial court held that the City was entitled to reasonable attorney fees under either or both statutes. It rejected the Company's contention that the two statutes are irreconcilable inasmuch as the Kansas legislature saw fit to re-enact K.S.A. 40–908 in 1967 subsequent to the decision of the District Court of Kansas in Smart v. Hardware Dealers Mutual Fire Insurance Company, 181 F. Supp. 575 (D.C.Kan.1960) which held that K.S.A. 40–908 had been repealed by implication by K.S.A. 40–256.

We adopt, as did the trial court, the better reasoning of the Supreme Court of Kansas in A. C. Ferrellgas Corp., Inc. v. Phoenix Insurance Co., 187 Kan. 530, 358 P.2d 786 (1961) that K.S.A. 40–256 did not repeal K.S.A. 40–908 by implication. In *Ferrellgas*, Judge Jackson noted the distinction between the two statutes at page 790:

"We do not think that the enactment of section 40–256 can be presumed to have shown a desire upon the part of the legislature to change the established policy of the state. Especially, this is true when both statutes may easily be construed to be operative side by side. If the policy is one insuring *property* as provided in the old statute, (K.S.A. 40–908), the insurance company must pay attorney fees as provided therein. If the judgment is as to *any other type of policy*, then the insurance company may govern its liability under the newer statute." (K.S.A. 40–256.) (Emphasis added.)

We find the Company's contention that K.S.A. 40–908 violated the Fourteenth Amendment of the United States Constitution untenable.

The traditional constitutional test of Equal Protection under the Fourteenth Amendment is that of reasonableness of classification. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), citing at p. 638 Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369 (1911).

As applied to most statutory and administrative classifications, this test was clearly expressed in Rinaldi v. Yeager, 384 U.S. 305, at p. 309, 86 S.Ct. 1497, at p. 1499, 16 L.Ed.2d 577 (1966) in which the United States Supreme Court stated at:

" 'The Constitution does not require things which are different in fact * * * to be treated in law as though they were the same.' Tigner v. State of Texas, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124, 1128, 130 A.L.R. 1321. Hence, legislation may impose special burdens on defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made' " (authorities cited).

K.S.A. 40–908 has been re-enacted in substance by the Kansas legislature since its original enactment in 1893

now pending, or hereafter commenced in which judgment is rendered against *any insurance company on any policy given to insure any property in this state against loss by fire, tornado, lightning or hail,* the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action including proceeding upon appeal to be re-

covered and collected as a part of the costs: Provided, however, That when a tender is made by such insurance company before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed." (Emphasis added.)

presumably because the Kansas legislature determined that the state has a particular concern in fire insurance which the Kansas Supreme Court has described as a business "clothed with a public interest". British American Assurance Co. v. Bradford, 60 Kan. 82, 55 P. 335 (1898). The imposition by the Kansas legislature of a special standard on companies insuring against fire, tornado, lightning and hail losses is a reasonable classification and satisfies the constitutional standard of Equal Protection.

The Company contends that K.S.A. 40–908 violates the Due Process Clause of the United States Constitution because it places an unreasonable burden on the right of the insurance company to freely litigate disputed matters. It claims that the effect of the statute is to take property without due process; to compel the insurer to anticipate the damages which the insured will be awarded in order to avoid the assessment of attorneys fees.

■ We do not concur in this punitive interpretation of the statute. A similar Florida statute [7] which has as its admitted purpose the discouragement of contesting insurance policies in the courts of Florida has been upheld on the basis of public policy in that state. Lumbermen's Mutual Casualty Company v. Renuart-Bailey-Cheely Lumber and Supply Co., 392 F.2d 556 (5th Cir. 1968). The same statute has survived an attack on its constitutionality based on Due Process. Empire State Insurance Company v. Chafetz, 302 F.2d 828 (5th Cir. 1962). In the absence of authority to support the Company's challenge, we hold that K.S.A. 40–908 does not contravene the Due Process Clause of the Fourteenth Amendment.

Having determined that K.S.A. 40–908 is viable and is the applicable statute in this case, we find it unnecessary to pass upon the question of whether the evidence indicates that the Company's refusal to pay the City's original claim was "without just cause or excuse" as K.S.A. 40–256 requires.

The judgment below is affirmed with interest from and after the judgment and order. This matter is remanded to the trial court for the sole purpose of determining the amount of attorney fees on appeal.

---

7. § 627.0127 Florida Statutes Annotated which provides that any insured or beneficiary who obtains a judgment or decree against an insurer under a policy or contract of insurance executed by the insurer may be awarded reasonable attorney fees for the prosecution of the suit in which the recovery is had.