**INSURANCE COMPANY OF NORTH AMERICA/AETNA INSURANCE COMPANY, Plaintiff,**

v.

**CITY OF COFFEYVILLE, Defendant.**

Civ. A. No. 84–2131.

United States District Court,
D. Kansas,

Feb. 21, 1986.

Paul H. Niewald, Niewald, Waldeck, Norris & Brown, Kansas City, Mo., Michael G. Norris, Niewald, Waldeck, Norris & Brown, Overland Park, Kan., for plaintiff.

Woody D. Smith, Roger L. Gossard, Becker, Hildreth, Eastman, Gossard, Bell & Hassenplug, Coffeyville, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

Through this action, plaintiff seeks a declaratory judgment that it has fully discharged its obligations to defendant under a certain policy of insurance. Because the parties have stipulated to nearly all material facts, our task is essentially limited to construction of the relevant insurance contract.

This suit arose from an explosion which occurred at defendant's electrical power plant. Allegedly in accordance with the terms of the applicable property insurance policy, plaintiff paid defendant an amount of money equal to the cost of replacing the damaged items minus an amount for accumulated depreciation. The specific issue for our resolution is whether plaintiff was entitled to that deduction for depreciation when calculating its liability for the loss. We hold that plaintiff was so entitled.

This action was tried to the court on January 29, 1986. Upon reviewing the pleadings, the evidence received at trial (including two depositions), and the arguments of counsel, the court makes the following:

### Findings of Fact

1. Plaintiff insurance company is incorporated in a state other than Kansas and has its principal place of business in Pennsylvania.

2. Defendant City is a municipal corporation located in the state of Kansas.

3. The amount in controversy, exclusive of interest and costs, exceeds the sum of $10,000.00.

4. On or about September 1, 1981, plaintiff issued its Policy of Insurance No. CPP37–07–99 to defendant. Said policy was in force on August 5, 1983.

5. On that date, an explosion occurred at defendant's electrical power plant. Such explosion was a covered peril under the insurance policy issued by plaintiff.

6. Page 1 of said policy provides that the plaintiff "does insure the insured ... to the extent of the *actual cash value* of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss,...." (Emphasis added.)

7. Attached to said policy, and made a part thereof, is a "STATEMENT OF VALUES." Immediately below the lines left for the name and address of the insured is a line labeled "Form of Coverage." At this point, an insured is given two options—either "Actual Cash Value" or "Replacement Cost." The STATEMENT OF VALUES attached to this policy has an "X" placed in the box next to "Actual Cash Value" and indicates that that option is to apply to "all" items. No "X" appears in the box next to "Replacement Cost." The STATEMENT OF VALUES indicates that it was submitted by the "Winston Ins. Agency, Inc.," of Coffeyville, Kansas. Signing this statement on behalf of defendant, and thereby certifying that "[a]ll values submitted [were] correct to the best of [her] knowledge and belief," was Carolyn Ernzen, defendant's city clerk and director of finance.

8. The policy in question contains a limited replacement cost endorsement. In pertinent part, it reads as follows:

LIMITED REPLACEMENT COST—PART I—PROPERTY: In the event of loss to a building structure covered under Part I—Property of this policy, when the full cost of repair or replacement is less than $1,000 the coverage of this policy is extended to cover the full cost of repair or replacement (without deduction for depreciation).

9. The Winston Ins. Agency, Inc., had acted as defendant's insurance broker for at least twelve years prior to the 1983 explosion. Throughout that time, defend-

ant had always opted for actual cash value coverage rather than replacement cost coverage.

· 10. In 1979, defendant's then-city manager, Jim Page, recommended that defendant hire a consultant to analyze the adequacy of its insurance coverage. Defendant's city commission authorized Page to retain the Brennan Group to conduct such an evaluation. The Brennan Group was asked to make · specific recommendations as to those areas in which it believed defendant had inadequate insurance protection.

11. In January of 1980, the Brennan Group submitted a written report to defendant and the Winston Ins. Agency, Inc., regarding defendant's insurance coverage. The report noted its drafter's understanding that defendant was insured on an actual cash value basis, and it recommended that a change be made to replacement cost basis. In rather clear terms, the report explained the difference between these two types of coverage—even tying this explanation to specific examples involving three of defendant's insured structures.

12. Doug Winston of the Winston Ins. Agency, Inc., discussed the report with both Jim Page and Carolyn Ernzen (defendant's city manager and city clerk/director of finance, respectively) shortly after it was submitted by the Brennan Group. Both of defendant's officers indicated that they understood there was a difference between the two types of coverage, and at least Jim Page acknowledged in his deposition that he understood what that difference was. Doug Winston requested that defendant supply him with replacement cost values for the insured properties so that defendant's policy could be changed from an actual cash value basis to a replacement cost basis. Such replacement cost values were never provided to Mr. Winston or his insurance agency.

· 13. On July 18, 1980, defendant's Memorial Hall was partially destroyed by fire. That· building was covered by the same type of policy in effect when the electrical power plant explosion occurred. Defend-

ant hired its own insurance adjuster to handle the negotiations with plaintiff's insurance adjuster. Ultimately, the Memorial Hall loss was adjusted on the basis of cost of repair minus depreciation. Defendant's city commission unanimously agreed to accept an insurance payment calculated on that basis.

14. On July 17, 1984, plaintiff paid defendant $1,673,952.30 for the loss defendant suffered as a result of the explosion at its electrical power plant. With minor adjustments for a $500.00 deductible and a $50,000.00 advance payment, this amount was arrived at by determining a reasonable replacement cost of $2,647,420.50 and subtracting therefrom depreciation in the amount of $922,968.20. The parties have stipulated that these replacement cost and depreciation figures are correct. At the time of the July 17th payment, defendant agreed to accept that amount and to submit to this court the question of whether it was also entitled to the amount calculated for depreciation. Plaintiff filed this declaratory judgment action as a means of submitting that issue to the court.

*Conclusions of Law*

1. This action is within our subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1) [diversity of citizenship] and 2201(a) [declaratory judgment].

2. The parties have waived any and all objections to both personal jurisdiction and venue in this district.

3. In this diversity action, we must apply the substantive law of the state of Kansas. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Vandeventer v. Four Corners Electric Co., Inc.,* 663 F.2d 1016, 1017 (10th Cir.1981).

4. The Kansas Supreme Court has adopted the following rules for construction of insurance contracts. "Insurance policies must be construed according to the sense and meaning of the terms used, and if the language is clear and unambiguous, it must be taken in its plain, ordinary and

popular sense." *Thomas v. American Family Mutual Insurance Co.*, 233 Kan. 775, 777, 666 P.2d 676, 678 (1983). "The language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties." *Id.* "The test to be applied in determining the intention of the parties to an insurance policy is not what the insurer intended the policy to mean, but what a reasonable person in the position of the insured would understand it to mean." *Id.*

5. Defendant places heavy reliance on the opinion of the court in *Thomas*. In one respect, the policy at issue in that case was identical to the one at issue here. Both provide for payment to the insured "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss." *Id.*, 233 Kan. at 776, 666 P.2d at 677. Because this clause makes no explicit reference to the deduction of a depreciation amount in arriving at actual cash value, the *Thomas* court held that the insurer in that case was obligated to pay the full replacement cost. *Id.* That court specifically stated, however, that its holding was limited to the "facts in this [*Thomas*] case." 233 Kan. at 778, 666 P.2d at 679.

6. The facts of this case are clearly distinguishable from those in *Thomas*. These distinctions are of two major kinds. First, the policy at issue here contains provisions which do act to define actual cash value and to differentiate that term from replacement cost. Second, the prior course of dealing between these parties demonstrates that defendant did in fact share plaintiff's definition of actual cash value.

7. The first policy provision distinguishing this case from *Thomas* is the STATEMENT OF VALUES. As noted in Finding No. 7, *supra,* this statement clearly offered defendant the option of either actual cash value coverage or replacement cost coverage. A reasonable person confronted with this choice would understand that the terms must differ in some respect. It was thus unreasonable for defendant to assume that, although it had declined to opt for replacement cost coverage, it was nonetheless entitled to recover replacement cost in the event of a loss.

8. The second distinguishing policy provision actually *defines* actual cash value. It does so in an unambiguous, albeit indirect, manner. We refer to the limited replacement cost endorsement, quoted in Finding No. 8, *supra.* It states that "when the full cost of repair or replacement is less than $1,000 the coverage of this policy is *extended* to cover the full cost of repair or replacement (*without deduction for depreciation* )." (Emphasis added.) Use of the term "extended" demonstrates that coverage is more favorable for losses of less than $1,000 than for a larger loss such as that at issue here. Such more favorable coverage is termed "full cost of repair or replacement." Again, then, defendant was unreasonable if it believed itself entitled to recover full replacement cost for this larger loss.

More importantly, the parenthetical expression "(without deduction for depreciation)" serves to *define* "the full cost of repair or replacement." The only reasonable conclusion to be drawn from this provision is that the more restrictive coverage for losses in excess of $1,000 (labeled "actual cash value") is to be calculated *with* a deduction for depreciation. Defendant is of course correct in contending that this definition of actual cash value could have been stated more directly. Nonetheless, the rules of construction do not permit us to torture the terms of an insurance contract to create an actual ambiguity where one does not exist.

9. The prior course of dealing between these parties (and even within defendant's own administration) conclusively demonstrates that defendant understood the difference between actual cash value coverage and replacement cost coverage. That distinction was clearly explained in the study defendant commissioned to have

done by the Brennan Group. Defendant's own insurance agent further discussed that study with defendant's city manager and city clerk/director of finance. In follow-up letters, defendant's insurance agent requested the City to provide the replacement cost valuation data needed to convert the policy from an actual cash value to a replacement cost basis. Most importantly, defendant had been through an almost identical loss and adjustment process as recently as 1980, when its Memorial Hall was partially destroyed by fire. At that time, defendant clearly agreed that the policy at issue here entitled it to recover only the actual cash value of the destroyed property, and not its replacement cost.

Suggestions in defendant's briefs that the Memorial Hall loss occurred during the tenure of a prior city commission are irrelevant. When plaintiff issued its policy of insurance, it contracted with the *city*, and not with the city's incumbent city commissioners. In any event, the evidence shows that Carolyn Ernzen, defendant's city clerk and director of finance, held her position both at the time of the Memorial Hall fire and during the electrical power plant explosion. Thus, even if defendant's actual knowledge of the basis on which the Memorial Hall loss was adjusted were deemed necessary to our analysis, such knowledge has been shown through the extended tenure of Ms. Ernzen.

10. Unlike the policy at issue in *Thomas*, then, this policy does contain a definition of actual cash value. In this respect, the policy more nearly resembles that construed in *Lerer Realty Corp. v. MFB Mutual Insurance Co.*, 474 F.2d 410, 412 n. 1 (5th Cir.1973). *Lerer* was specifically distinguished by the *Thomas* court on this ground. We thus believe that the Kansas Supreme Court *would* permit plaintiff to deduct the stipulated depreciation amount under the facts of this case.

11. This conclusion is not altered by defendant's citation of *Iowa National Mutual Insurance Co. v. City of Osawatomie, Kansas*, 458 F.2d 1124 (10th Cir.1972) (applying Kansas law). Defendant correct-

ly notes that the Tenth Circuit in that case rejected the insurance company's definition of "actual cash value" as replacement cost less depreciation. 458 F.2d at 1129. However, that case is clearly distinguishable from the one at hand. First, the court there noted that the parties had *agreed* as to the actual cash value of the insured property and had written the insurance policy on that basis. 458 F.2d at 1126. In the instant case, the only values agreed upon between plaintiff and defendant were those shown in the itemized STATEMENT OF VALUES. The testimony at trial established that those values were simply the original cost of purchase or construction with an annual upward adjustment for inflation. It would take little time for such book values to diverge from actual cash values. A second, and perhaps more important, distinction between the two cases has to do with the total obsolescence of the equipment lost by the City of Osawatomie. That city chose to replace its lost property with newer equipment having a greater generating capacity and a longer useful life because this option was actually *less* expensive than replacing the lost property with identical (but obsolete) equipment. Indeed, the district court found that the city could have been placed "in a substantially identical position" only by expending even more money than it spent on the new and improved equipment. 458 F.2d at 1129. For that reason, the Tenth Circuit affirmed the district court's award of the amount actually spent by the city in purchasing the new equipment. By contrast, we have seen no evidence in this case to suggest that the property damaged in the explosion at defendant's electrical power plant was obsolete or that a new and improved version of that property could be obtained for less money than would be necessary to reproduce the equipment as it existed immediately prior to the explosion. Accordingly, the Tenth Circuit's reasoning in *Iowa National Mutual* is not applicable here.

12. For the reasons stated above, we conclude that the term "actual cash value" (as it appears in the contract of insurance between *these* parties) refers to replace-

ment cost minus depreciation. The parties agree that plaintiff has already paid defendant that amount. Accordingly, defendant is not entitled to the additional $922,968.20 stipulated as the amount of depreciation.

## ORDER

IT IS THEREFORE ORDERED that judgment be entered in favor of plaintiff Insurance Company of North America/Aetna Insurance Company and against defendant City of Coffeyville.