STATE BANK OF BLADEN, APPELLANT, V. ANNA STRICKLER, APPELLEE.*

FILED MAY 3, 1919. No. 20204.

1. **Principal and Agent: UNAUTHORIZED CONTRACT: REPUDIATION.** If one repudiates an unauthorized contract entered into by his agent, he must reject it as a whole. He cannot avail himself of those provisions favorable, and reject others.

2. **Bills and Notes: EVIDENCE: SUFFICIENCY.** The evidence indicated in the opinion will not justify this court in setting aside its former judgment on the ground of failure of evidence.

3. **Appeal: INSTRUCTIONS.** A judgment will not be reversed upon appeal because of the giving of an indefinite or incomplete instruction, unless the party complaining offered and requested a more definite instruction, or it appears from the whole record that the jury may have been misled by the instruction given.

APPEAL from the district court for Webster county: HARRY S. DUNGAN, JUDGE. Rehearing denied.

L. H. Blackledge and Stiner & Boslaugh, for appellant.

Bernard McNeny and J. S. Gilham, contra.

*First heard before Commission. No opinion.

Sedgwick, J.

After the judgment had been entered, the motion for rehearing was argued before the court.

1. The point most discussed in the brief is the contention that the cashier of the bank did not have authority as such cashier to make the contract alleged as a defense in the answer and testified to by the defendant. If the contract was made as the defendant testified, it must be considered as a whole. We cannot hold it valid in part and invalid in part. It included the cancelation of the note given by the deceased, and extending the time for payment of the same. If the cashier did not have power to make the contract, then these provisions would of course fall with the rest of the contract. In that case there would be no consideration for the defendant's note, and the bank should have disregarded the invalid contract of the cashier, and filed its claim against the estate.

2. The brief also strenuously argues that the evidence was not sufficient to support the verdict of the jury as to the cause of action on the principal note. When the note of the deceased became due, the cashier, Bennett, notified this defendant, the widow, of that fact. She called immediately, and, according to his testimony, she stated that she did not know that there was such a note against the deceased and asked him what she should do. He had drawn the will of the deceased; had been their family adviser in business matters for several years; and, according to his own testimony, the suggestion came from him that she give her note, and the note of the deceased be canceled. Why he made that suggestion is not apparent. The estate was abundantly good; the note of the deceased was drawing interest at a good rate; he says the bank had money to loan and did not care about getting the money. All they had to do was to file the note, if it was valid against the estate, and it would be allowed with interest; and yet he suggested to her to have that

note canceled and give her own note in place of it. The note against the deceased was canceled. The cashier, Bennett, canceled it, and, after he had so canceled it, it would be natural for him to answer her next question as she says he did. She asked him what to do with the old note, and he said, "Take it and tear it up, and throw it away, or anything." She accordingly tore off the name of the deceased and kept the old note. This woman in her testimony made some statements as to what took place that are in some respects inconsistent; but, when she was asked questions in regard to these statements, she stated frankly that she could not remember all of those details, and made the statements that she made as her best recollection in regard to it. We cannot say that the evidence does not support the verdict of the jury on that issue. A good deal is said in the briefs in regard to what the bank did afterwards. Bennett, the cashier, who did this business, had left the bank. Just why perhaps the record does not show, and the remaining officers appear to be honest men. They did not know what motives Bennett had, nor why he should suggest some exchange so as to get that note, for which he had virtually taken credit in his management of the accounts of the bank, out of the way. We cannot derive any assistance from what the other bank officers did afterwards when Bennett was gone and before they knew what his motives were in trying to get rid of this note.

3. The motion attacks instruction No. 1 given by the court. It presents two objections to this instruction: The first is predicated upon the assumption that the cashier did not have authority to do what he did, which has already been answered. The second objection to this instruction is that it is not complete enough, and it is not contended in the briefs that any more complete instruction was offered.

Our judgment reverses the finding of the jury on the smaller claim, and directs judgment against the defend-

ant on that claim. If that claim included interest upon the indebtedness of the principal note, it was to that extent probably not a valid claim against the defendant, but it mostly, if not all, was for money actually loaned to the defendant, and the defendant is not asking for a rehearing.

The motion for rehearing is

OVERRULED.

LETTON and CORNISH, JJ., not sitting.