BANK OF AXTELL, APPELLEE, v. ARTHUR G. JOHNSON, APPELLANT.

FILED JULY 3, 1933. No. 28561.

*Stiner & Boslaugh, Carrico & Carrico* and *Edmund P. Nuss,* for appellant.

*J. L. McPheely, Burkett, Wilson, Brown, Wilson & Van Kirk* and *C. P. Anderbery, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY, DAY and PAINE, JJ., and MESSMORE, District Judge.

MESSMORE, District Judge.

This is an appeal from the district court for Kearney county by appellant, Arthur G. Johnson, one of the defendants in the court below.

The petition of plaintiff is in the usual form and contains three causes of action on promissory notes, one for $188, one for $1,000 and one for $4,600.

The separate answer of defendant Arthur G. Johnson admits the signing of the $188 note and the $4,600 note; alleges that he signed said notes after defendant Eddie H. Johnson had signed and delivered said notes to plaintiff; that the same were signed without consideration to him and therefore void; alleges that he signed the notes upon the representations of the president of plaintiff bank; that the principal on said notes was indebted to said bank in the sums represented thereby; that he believed and relied on said representations, but since the signing of said notes has learned that said representations were not true and were made with the purpose and intent of deceiving

this defendant and of obtaining his signature thereto; alleges further that he does not have sufficient knowledge as to whether or not his codefendant, Eddie H. Johnson, has paid the notes mentioned in plaintiff's petition and demands strict proof thereof, and denies each and every allegation contained in the petition not specifically admitted.

Plaintiff by reply denies each and every allegation of said answer; alleges that said defendant Arthur G. Johnson signed said notes set forth in paragraphs 1 and 3 of the petition, the $188 note and the $4,600 note, at the request of defendant Eddie H. Johnson, and that he signed said notes as surety.

The jury returned a verdict against the defendant Arthur G. Johnson in the amount of $4,788, the court having theretofore directed a verdict against the defendant Eddie H. Johnson, submitting only to the jury the alleged liability of defendant Arthur G. Johnson on said notes.

The evidence of plaintiff went to the history of the notes in suit and the signing of same by appellant. The $4,600 note had been renewed on several occasions in the past eight or nine years and at each time the old note had been marked paid and surrendered, so the particular note in controversy stands as a renewal note.

An alleged conversation appears in plaintiff's evidence, as related by A. G. Warren, principal witness for plaintiff, wherein Arthur G. Johnson said: " 'Mr. Warren, I would pay the notes if I had the money; I know Brother Ed hasn't the money and I would pay it if I had the money.' I said, 'I will loan you the money and take a mortgage on the farm.' We agreed and I made out the mortgage and notes. Then he (Arthur G. Johnson) said, 'Hold the mortgage and notes a few days.' "

The witness further testified: "He came in a few days later and we talked the matter over and I said that we should close this up, and he said that we might as well. I

went that afternoon to Minden to record the papers and I offered him those notes, and he said, 'No; you keep them.' I took the mortgage and filed it for record. The next morning he came in, Arthur G. Johnson, with another party and wanted to call it off. I said, 'All right, I will call to the county clerk and tell him not to record it.' We both went up there and got the papers and gave them back."

To continue: "What did he tell you about going back on the deal afterwards? A. He said if he took the notes and gave me a mortgage he would have to sue his brother and he didn't want to. He said, 'The better way is for you to sue us both, and when you get a judgment I will pay it, but I don't want to sue my brother.'" "Q. What conversation did you have with the defendant Arthur Johnson as to why he didn't want to take the three notes and hold them against his brother, if anything was said along that line? * * * A. He said he didn't want to sue his brother; he preferred to have the bank sue them both and after the bank gets a judgment he would pay it." There also developed in the evidence the following: "What was the occasion of Arthur G. Johnson signing that $6,000 note, if you recall? (This later developed into the $4,600 note in suit after payments had been made thereon.) A. The banking department of the state of Nebraska sends out their examiner with instructions under the banking laws of the state of Nebraska and he examines every note in this case, and prior to that time he made objections to our loaning money to Ed Johnson without some security. I asked him what he would require, and he said, 'Either get a signer with a property statement or chattel security.' I took it up with both Arthur and Ed and the agreement was made that Arthur would sign the note." The witness testified to a conversation had with appellant in the bank as follows: "I explained to him that the banking department would not allow us to loan so much money without security, and that I had offered to take security

through property, but he wouldn't give it, and then I said, "The department said if you would sign a statement, give a property statement and you boys go on the note together we will carry you.' Q. What did he say? A. He said he would do it."

The evidence of appellant is that his brother Eddie had never talked to him about signing the $4,600 note, but that Mr. Warren told him the banking department demanded his signature; that he received nothing from the bank at that time for signing the note, nor at any other time, and practically verified the conversations related by Mr. Warren, as set out in the record.

Appellant's evidence as an accommodation signer was to the effect that he did not receive any benefit or consideration, directly or indirectly, by way of the transaction of which the note was a part; that the $4,600 note was not signed by him at the time Eddie H. Johnson signed it; that it was without the prior knowledge, consent or procurement of the maker thereof, Eddie H. Johnson, and that no agreement or understanding existed between all the parties, the creditor, the principal and the surety, that the surety should sign as such.

The only assignment of error is to instruction No. 3, and the part thereof objected to is as follows: "If there was no such agreement in this case and if the defendant Arthur G. Johnson attached his signature to the notes in suit only as a matter of accommodation to the bank to enable it to make a showing which would satisfy the bank examiner as to that paper, and without the prior knowledge, consent or procurement of the defendant Ed H. Johnson, then Arthur G. Johnson would not be liable as surety in this case." The court in the first part of this instruction, to which no objection is made, correctly stated the law upon the question of suretyship, which informed the jury as follows: "Upon the question of suretyship you are instructed that one signing as surety for another becomes liable for the debt by reason of his promise to

pay the same and by reason of the giving of credit to the principal maker on account thereof. It is not necessary in such cases in order to fix the liability of the surety that there should be any special or separate consideration or value passing to the surety for the signing of the note. The value consists in the extension of the credit to the principal maker for whom the surety signs. Neither is it necessary in order to make the contract binding on the surety that it should be signed at the same time or at the same place by him and the principal. It is necessary, however, that there be an agreement and understanding between all the parties, the creditor, the principal and the surety, that the surety shall sign as such; and the actual signing may be done at the same time or at different times to suit the convenience of the parties."

Appellant's contention is that the part of the instruction objected to shows that in order to return a verdict for him the jury could return a verdict in his behalf only (1) "if there was no such agreement in this case;" (2) "if the defendant Arthur G. Johnson attached his signature to the notes in suit" (a) "only as a matter of accommodation to the bank to enable it to make a showing which would satisfy the bank examiner as to that paper; and (b) without the prior knowledge, consent or acquiescence of the defendant Ed. H. Johnson." And that before the jury under such an instruction could find for the appellant it was tantamount to telling the jury that appellant must prove, or there must exist, three separate and distinct defenses, when in reality any one of the following findings by the jury under a correct instruction would be sufficient to defeat plaintiff's action: (1) If the jury should find there was no such agreement of suretyship as indicated by the instruction; (2) or, on the other hand, if the jury should find from the evidence appellant signed only as a matter of accommodation to the bank to enable it to make a showing which would satisfy the examiner, and that appellant received nothing, directly or indirectly, by way of

the transaction; (3) or signed without the prior knowledge, consent or acquiescence of Eddie H. Johnson, the maker of the notes. It is contended that the conjunction "and" places the three defenses together as one, which is erroneous.

The evidence of appellant was founded on the proposition of suretyship and that he was an accommodation surety. The court, in the instruction objected to, does not tell the jury that they could only return a verdict for appellant in the event they found all the facts recited to be true, nor does the court, in the language of the instruction complained of, say to the jury, in substance or otherwise, that the jury must find the existence of all the facts recited as a condition precedent to a verdict for appellant. The instruction, while technically incomplete, is not prejudicial and the jury were not misled thereby. The evidence as presented by appellant, which goes exclusively to the proposition set forth in such instruction, was not so complicated but that the jury could understand the full purport of appellant's contentions, and neither were the witnesses so great in number but what the matter could be easily understood. If there was no such agreement as claimed by appellee for the signing of said notes by appellant and appellant did sign them, as testified to by appellant and his brother, without prior knowledge, consent or procurement of defendant Eddie H. Johnson, but merely to satisfy the bank examiner, then appellant was not liable as surety.

The instruction could have been more complete, but this court is committed to the rule that, where an instruction is free from error prejudicial to the substantial rights of appellant, such instruction will not be disturbed. The supreme court will disregard any error or defect in instructions given, or error in the failure or refusal to give instructions requested, where the same do not affect the substantial rights of the parties. *In re Estate of Noren,* 119 Neb. 653.

In *Culver v. Union P. R. Co.*, 112 Neb. 441, it was held: "Where no instructions are tendered to the trial court by a party who afterwards appeals and assigns error in certain instructions, this court will not examine the charge with such a critical mind as where the trial judge has had the benefit of the views of the appellant as to the proper legal principles applicable by the tender of instructions on the points involved." No instruction was tendered by appellant herein on his theory now presented to this court, but he presents merely a criticism of the lower court's one instruction which covered the essential points in this case as portrayed by his answer and by the evidence.

"A judgment will not be reversed upon appeal because of the giving of an indefinite or incomplete instruction, unless the party complaining offered and requested a more definite instruction, or it appears from the whole record that the jury may have been misled by the instruction given." *State Bank of Bladen v. Strickler,* 103 Neb. 490.

Appellee after the verdict filed a motion to have the trial judge compute the interest and add the amount thereof to the verdict in so far as the $4,600 note was concerned, which motion the court overruled. Appellee cross-appeals, alleging that the motion should have been sustained and the trial court should have added the interest as requested. Appellee did not file a motion for a new trial. While it would have been more advisable, when the mistake was noted, to have sent the jury back to complete the verdict, or if counsel for appellee had been diligent the error might have been corrected in time, which is, of course, the better practice, it is obvious from the verdict that the jury intended to render a verdict in favor of plaintiff on the $4,600 note, for it is not contended that this note did not draw interest nor that interest should not have been added; naturally, interest would follow. The court would not necessarily have to resort to the evidence to perform this act. While this is a function of the jury, the jury failed to complete its act properly.

In *Calnon v. Fidelity-Phenix Fire Ins. Co.*, 114 Neb. 194, it was held: "Where, from the verdict and the pleadings, as in this case, it appears that, if plaintiff is entitled to recover at all he is entitled to recover interest, the court should make the computation and cover the amount of interest in the judgment."

And, further, quoting from the same case: "Upon presentation of the motion to include interest, the court was empowered to do either one of two things: (a) Amend the verdict by adding interest and including it in the amount of the judgment rendered thereon; or (b) make the computation and cover the amount of interest in the judgment without any amendment to the verdict whatsoever. The latter seems to be indicated by this court as proper practice in such cases."

In *Wiruth v. Lashmett*, 85 Neb. 286, in referring to the proposition in that case involved in this one, it was held: "It is probably true that, had the action been founded upon the promissory notes referred to in the verdict, the court could have made the computation of interest and entered judgment for the correct amount and the judgment have been legal." However, taking that as a basis, this court has definitely held in the case of *Calnon v. Fidelity-Phenix Fire Ins. Co., supra,* that the lower court should make the computation of interest and add that amount to the judgment.

For the reasons stated, the judgment entered in this cause in favor of plaintiff for the sum of $4,788 is affirmed subject to be corrected by the addition of interest to be computed by the trial court, and the judgment of the district court overruling the application of plaintiff for the inclusion of interest is reversed and the cause remanded to the district court for further proceedings in compliance with this opinion.

AFFIRMED IN PART, AND REVERSED IN PART.