FIRST NATIONAL BANK IN MITCHELL, APPELLEE, V. PAUL BOLZER, APPELLANT.

377 N.W.2d 533

Filed December 6, 1985.   No. 85-227.

Frederick B. Allan, Jr., of Allan, Brauer & Mullally, for appellant.

John A. Selzer of Wright, Simmons & Selzer, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Paul Bolzer appeals from a judgment entered by the district court for Scotts Bluff County, Nebraska, following a trial to a jury, finding Bolzer indebted to the appellee, First National Bank in Mitchell (First National), in the total sum of $143,838.69. The judgment was based upon a certain guaranty allegedly signed by Bolzer, in which he guaranteed to pay First National the indebtedness owed by his son, Orin Bolzer. Bolzer assigns several errors, including that the district court erred in granting First National "pre-judgment interest." He also claims that the district court erred in giving certain instructions and refusing to give certain instructions.

Though there are disputes regarding the facts, the record reasonably supports the conclusion that, sometime prior to December 1982 or January 1983, First National had made certain loans to Orin Bolzer. In December of 1982 or January 1983, First National determined that it could no longer continue to provide financing to the son without some further security. First National testified that it decided unless Paul Bolzer agreed to guarantee his son's loans, First National would not continue the son's line of credit. As a result of that request, First National maintains, Bolzer signed a guaranty on February 25, 1983. The guaranty, purportedly signed by Bolzer to First National, was offered in evidence and provided as follows:

GUARANTEE

TO: The First National Bank in Mitchell, Mitchell, Nebr.

We, the undersigned, being interested in the business success of Orin Bolzer (hereinafter referred to as the debtor), and desiring to assist said debtor in obtaining credit and money from you, hereby request and authorize you to extend or advance to the said debtor such credit accomodations [sic] and money as he may from time to time request or make application for, and in case you have heretofore purchased or discounted or may hereafter purchase or discount, for debtor any note or notes, or may hereafter advance to said debtor any money, or if said debtor be now or shall hereafter become indebted to you in any manner or upon any account; I do hereby promise

and agree to pay the same and do hereby guarantee full
payment to you at ·maturity of all such notes and of all
sums of money now or hereafter due or owing by said
debtor to you or any account or liability whatsoever, and I
hereby consent to any extensions of time of payment or
other accomodations [sic] you may make to said debtor.

We further agree that you may, without notice to us,
pledge, sell, or assign any and all indebtedness covered by
this guarantee.

The guaranty was allegedly signed by Paul Bolzer and witnessed
by an officer of the bank on February 25, 1983.

Bolzer denied that he signed the guaranty of February 25,
1983, and denied that he guaranteed any amount already
advanced to his son, or any subsequent advances. He did admit,
however, that he had signed a guaranty for a family corporation
on August 25, 1978. Upon default, Bolzer paid the family
corporation's debt to First National.

Bolzer further introduced evidence that he could neither read
nor write except for his signature and certain numbers and that
he had only a third-grade education.

As to the debt itself, the evidence was without dispute that
Bolzer's son had in fact signed the two notes allegedly
guaranteed by Bolzer. First National testified that as of the date
of trial, there was due and owing on one of the notes the
principal sum of $115,500 plus interest of $20,990.01, for a
total owing on the note as of that date of $136,490.01. It further
testified that on the second note there was due and owing as of
the date of trial the principal sum of $5,520.81 plus interest of
$1,829.58, less a credit life insurance rebate of $48.43, for a
total of $7,301.96. The jury returned a verdict for First
National on the first note in the amount of $115,500 and on the
second note in the amount of $7,287.46, apparently being the
principal amount due as of that date. Thereafter, and within
time, First National filed a document which it entitled "Motion
to Include Prejudgment Interest." The district court granted its
motion and amended the judgment on the first note to include
interest in the sum of $21,034.31, and on the second note the
additional amount of $16.92.

Bolzer contends that the district court erred in not instructing

the jury, as requested by Bolzer, that "[i]n order for the Bank to recover, it must prove by a perponderance [sic] of the evidence that Paul Bolzer signed the guaranty marked Exhibit 3." The trial court refused to give the instruction as requested by Bolzer and, instead, instructed the jury that

the plaintiff claims that the defendant guaranteed the debts of Orin Bolzer . . . .

The defendant denies any guaranty agreement was made.

. . . .

Before the plaintiff can recover, it must prove, by a preponderance of the evidence, all the following elements:

1. Mutual assent or agreement to the guaranty contract.

2. Consideration.

3. Breach of the guaranty contract by defendant's refusal to pay; and,

4. Damages, amounting to the unpaid debt of Orin Bolzer guaranteed by the defendant.

If the plaintiff has failed to establish any of the above-numbered elements, your verdict will be for the defendant.

The court further instructed the jury:

A contract is an agreement between two or more persons consisting of a promise or mutual promises which the law will enforce.

In order that there be an agreement it is clear that at least two parties are necessary. The parties must agree with definiteness on the same thing, on the same terms, and at the same time. . . .

While all of these instructions were correct and fairly reflected the law, and while it is true that "[i]nstructions must be taken as a whole and construed together, and when instructions cover the issues and fairly submit the case to the jury, the jury's verdict will not be disturbed unless it is clearly erroneous," *Ellis v. Far-Mar-Co*, 215 Neb. 736, 742, 340 N.W.2d 423, 427 (1983), nowhere was the jury advised here, in so many words, that the bank must prove that Bolzer in fact signed the warranty contract. It may be argued that in order for the jury to find that there was an "agreement to the guaranty

contract," it must obviously find that the agreement was signed by Bolzer. That argument, however, is not sufficient when we recognize that the purpose of the instructions is to advise lay persons with regard to the law. While lawyers and judges might recognize that an agreement to pay the debt of another must be in writing in order to satisfy the statute of frauds, and, therefore, the jury must find that the agreement was signed in order for it to be a binding agreement, lay members of a jury are not likely to be aware of that distinction.

As we observed in *Bodtke v. Bratten*, 166 Neb. 36, 45, 88 N.W.2d 159, 166 (1958):

> " 'The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict; and, with this end in view, it should state clearly and concisely the issues of fact and the principles of law which are necessary to enable them to accomplish the purpose desired.' . . ."

See, also, *Coyle v. Stopak*, 165 Neb. 594, 86 N.W.2d 758 (1957).

Furthermore, "it is error to refuse a proffered instruction which is warranted by the evidence and correctly states the law of the case, unless the principles involved are covered by other instructions." *Pearse v. Loup River Public Power District*, 137 Neb. 611, 617, 290 N.W. 474, 477 (1940). We have regularly said that it is the duty of the trial judge to instruct the jury upon the law of the case. "The instruction should be definite and certain, free from obscurity, involvement, and doubt." *Giveen v. Matthews*, 118 Neb. 125, 128, 223 N.W. 649, 650 (1929). In the instant case there was a clear issue of fact raised by both the pleadings and the evidence as to whether Bolzer signed the guaranty. Moreover, Bolzer specifically asked the district court to instruct the jury regarding this issue. The trial court, for whatever reason, chose to avoid calling the jury's attention to the fact that Bolzer denied signing the guaranty contract. Under the issues and evidence in the case, such an avoidance was error. For that reason the judgment rendered by the district court, based upon the jury verdict, must be reversed and the cause remanded for a new trial.

In light of the fact that the matter must be retried, we believe that several of the other errors assigned by Bolzer should be

considered so as to avoid the necessity of having to review those matters at a later time.

Bolzer further maintains that the district court erred in granting "prejudgment interest" because there was a dispute as to whether Bolzer was obligated on the guaranty. In support of that claim Bolzer cites to us the case of *Aetna Cas. & Surety Co. v. Nielsen*, 217 Neb. 297, 348 N.W.2d 851 (1984). While it is true that *Aetna* does stand for the proposition suggested by Bolzer, we believe that it is not dispositive of the issue in the present case. The difficulty with both the *Aetna* case and the instant case is that all of the parties have characterized the interest as "prejudgment interest." Prejudgment interest is interest due, pursuant to statute, prior to the rendition of a judgment. In the case of a written instrument, it is allowed on liquidated claims pursuant to the provisions of Neb. Rev. Stat. § 45-104 (Reissue 1984).

In the instant case, however, the amount due as interest prior to judgment was not by reason of a statute but, rather, by reason of an agreement of the parties. Therefore, the general rule regarding when prejudgment interest may be paid has no application.

In *Prudential Ins. Co. v. Greco*, 211 Neb. 342, 318 N.W.2d 724 (1982), we pointed out that where a lease agreement provided that unpaid rent shall bear interest from the date the rent was due, the lessor was entitled to recover not only the rent but the interest as well, even though the claim was in dispute. We said at 347-48, 318 N.W.2d at 727-28:

> Having "otherwise agreed," the provisions of § 45-104 were superseded by section 34 of the lease. . . . While the rule is generally to the effect that unliquidated demands do not bear interest until the amounts have been liquidated, the rule is otherwise where the parties have contracted to do otherwise. [Citations omitted.] Specifically, in 47 C.J.S. *Interest & Usury* § 40 a. at 99-100 (1982), the author notes: "Where the parties have contracted for the payment of a particular lawful rate of interest, to be paid after the maturity of the debt and on default in payment, such contract controls and the rate thus fixed is recoverable, provided the rate is not unconscionable.

Thus, if the contract provides for a certain rate of interest until the principal sum is paid, such contract generally will control the recovery as to the rate after maturity; in other words, the contract governs until the payment of the principal or until the contract is merged in a judgment."

See, also, *Schuett v. Hargens*, 173 Neb. 663, 114 N.W.2d 508 (1962).

First National testified that as of the date of trial there was due on the first note the principal sum of $115,500 plus interest as set out in the note in the amount of $20,990.01, for a total owing on the note as of that date of $136,490.01. First National further testified that there was owing on the second note as of the date of trial the principal sum of $5,520.81 plus interest of $1,829.58, less a credit life insurance rebate of $48.43, for a total amount owing as of the date of trial of $7,301.96. The first note, on its face, provided that interest would be paid "from date until maturity at the annual rate of 14 per cent." The second note also provided on its face that the principal would be paid with interest "at the rate of 16% per year until December 2, 1985." It would be a strange anomaly if, by merely disputing the validity of a note, one was relieved of paying the interest agreed to in the note on the theory that the claim was now unliquidated. Just as the principal was due once the jury believed that Bolzer signed the note, so, too, was due the interest provided for by the note. It is unfortunate that the parties have referred to this as "prejudgment interest" when in fact it is simply the interest contracted for by the parties and agreed to be paid in addition to the principal. To the extent that *Aetna Cas. & Surety Co. v. Nielsen, supra*, is in conflict with this opinion, it is overruled.

By sustaining First National's motion the district court did not award prejudgment interest. What, in effect, the court did in the instant case was to amend the verdict so as to have it conform to the proof. In *Calnon v. Fidelity-Phenix Fire Ins. Co.*, 114 Neb. 194, 206 N.W. 765 (1925), the jury returned a verdict in favor of an elevator building owner in the amount of $12,000. Under the terms of the policy, which was the basis of the claim, the policyholder was entitled to recover interest 60 days after the proof of loss was presented to the company. The

jury did not include the amount of the interest, and the district court denied the motion. On appeal to this court we said at 203, 206 N.W. at 768:

> It may be said that under the facts disclosed by the record the plaintiff was, by law, entitled to the sum of $12,000, with interest from January 10, 1922, to November 23, 1922. [Citations omitted.] Upon presentation of the motion to include interest, the court was empowered to do either one of two things: (a) Amend the verdict by adding interest and including it in the amount of the judgment rendered thereon; or (b) make the computation and cover the amount of interest in the judgment without any amendment to the verdict whatsoever. The latter seems to be indicated by this court as proper practice in such cases.

To the same effect is the case of *Bank of Axtell v. Johnson*, 125 Neb. 154, 249 N.W. 302 (1933). The bank sued on two promissory notes. The jury brought back a verdict for the principal amount of the notes only. The bank then moved the court to compute the interest and add it to the judgment. The district court refused to do so, and on appeal to this court we said at 161, 249 N.W. at 304:

> [I]t is obvious from the verdict that the jury intended to render a verdict in favor of plaintiff on the $4,600 note, for it is not contended that this note did not draw interest nor that interest should not have been added; naturally, interest would follow. The court would not necessarily have to resort to the evidence to perform this act. While this is a function of the jury, the jury failed to complete its act properly.

In the instant case the action of the district court was even more appropriate in view of the fact that the bank testified specifically to the amount of interest due and owing. Bolzer's assignment of error regarding the awarding of interest is without merit.

Bolzer next maintains that the judgment must be reversed because a guarantor is released by failure of the creditor to give notice of the extension of a debt, the giving of additional credit, or default. Bolzer argues that the evidence is clear that he did not receive notice of any additional sums being loaned to Orin

Bolzer or any extension of time of payment, nor did he receive any notice of default. We do not believe that First National's failure to provide Bolzer with this information is relevant. The alleged guaranty in this case is an absolute guaranty; and insofar as either extending additional credit or the time of payment, the guaranty specifically waives notice to the guarantor. The alleged guaranty specifically requests First National to make additional loans from time to time. The alleged guaranty further consents "to any extensions of time of payment or other accomodations [sic] you may make to said debtor." As noted in 38 C.J.S. *Guaranty* § 76 at 1244 (1943), "A guarantor is not discharged by an extension of time for payment or performance of the principal obligation if he consents thereto, as where the contract of guaranty expressly or impliedly provides for the extension . . . ." In *First West Side Bank v. Herzog*, 204 Neb. 356, 282 N.W.2d 38 (1979), we said: "Under an absolute guarantee of payment there is no condition as to demand and notice of default." (Syllabus of the court.) Bolzer's third assignment of error is without merit.

Bolzer's last claim is that it was error for the court not to give the jury a special instruction regarding Bolzer's literacy or lack thereof. However, Bolzer's literacy or lack thereof was not material to the issues in this case. Bolzer's answer denied the execution of the guaranty. He made no claim that he mistakenly signed the guaranty or that his signature was obtained by fraud due to his inability to read. He simply claimed that he did not sign the document. The issue to be resolved by the jury, therefore, was, Did Bolzer sign the guaranty? If it believed that he did not sign the guaranty, whether he could read or write was of no significance. And, moreover, absent a claim of fraud, if it believed he did sign the agreement, the fact that he could not read was also of no moment. In 17 C.J.S. *Contracts* § 139 at 885-86 (1963), the author notes:

> The general rule has been said to be that in the absence of fraud one who signs a written agreement is bound by its terms whether or not he can read; a person unable to read is still bound by contracts which he signs and which are otherwise valid and enforceable. A party's mere ignorance, occasioned by his limited intelligence and

understanding of the language and of the contents of the contract which he voluntarily executes, is not, in the absence of fraud, a ground for avoiding it, although it is different from what he supposed; one who is unable to read is not permitted to make contracts without the usual precaution to ascertain what they mean. So, where a person cannot read the language in which a contract is written, it is ordinarily as much his duty to procure some person to read and explain it to him before he signs it as it would be to read it before he signed it if he were able so to do, and his failure to obtain a reading and an explanation of it is such negligence as will estop him to avoid it on the ground that he was ignorant of its contents, nor may he thereafter be heard to say that he did not assent to its provisions; and, in the absence of a charge of fraud or error, he cannot be heard to complain that the contract should have provided otherwise than it did.

There were no issues raised by the pleadings regarding Bolzer's literacy or whether the guaranty was obtained by fraud. Absent that, there was nothing to submit to the jury by way of instruction on that issue.

The judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.