LON WENDELL STANSBERY, APPELLANT AND CROSS-APPELLEE, V. DAVID T. SCHROEDER, APPELLEE AND CROSS-APPELLANT.

412 N.W.2d 447

Filed September 18, 1987.   No. 85-703.

Leroy P. Shuster, for appellant.

Marvin O. Kieckhafer of Kay and Kay, for appellee.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

HASTINGS, J.

The plaintiff appeals from a verdict of $66,346.48 in his favor in a malpractice action against his former attorney. The defendant attorney also cross-appeals.

David T. Schroeder began representing Lon Wendell Stansbery in various legal matters in 1976 or 1977. In April of 1978, Stansbery began to serve some time in the Nebraska Penal and Correctional Complex for a driving while intoxicated conviction and gave Schroeder a durable power of attorney so Schroeder could handle Stansbery's affairs while he was in prison. Stansbery is an alcoholic, which Schroeder knew.

In August of 1979 Stansbery considered lending $110,000 to Albert and Judy Leisy so they could buy a trailer park from BCDJ Investments, Inc. As a part of that transaction, Stansbery was to receive a limited guaranty of the loan by Albert Leisy's mother. Schroeder was an officer, director, and majority shareholder of BCDJ at that time. During negotiations for the deal, Schroeder represented both BCDJ and Stansbery, as is evidenced by the bills he submitted to both.

Schroeder went out of town, and when he came back on October 17, 1979, he discovered that the loan had fallen through. He informed Stansbery of this and spoke to him about just lending BCDJ the money instead. On October 19 Schroeder borrowed $5,000 from Stansbery. Schroeder then presented Stansbery with some loan papers which Stansbery eventually rejected because he did not like the 10-percent interest or the 30-year term of the loan. After this, several more discussions were had about Stansbery's lending money to BCDJ, and Stansbery eventually agreed to a loan of $110,000 at 12 percent for a term of 10 years. The note was signed only by James R. Kohl as president of BCDJ. This $110,000 was applied to an outstanding loan BCDJ had with the Keith County Bank & Trust Company. Schroeder had personally guaranteed this loan with the bank.

As part of Stansbery's loan to BCDJ, Stansbery thought he was to receive a first mortgage on the trailer park BCDJ owned and a second mortgage on the Leisy ranch to secure the debt. He testified that he would not have agreed to loan the money with only the trailer park mortgage, or if he had known that the

Leisys were not involved, or if he could not look to Richard Dudden or the Kohls. However, there is nothing in the record to indicate that the Leisys ever had anything to do with the proposed loan to BCDJ, nor were guaranties of Dudden or the Kohls ever proposed. Stansbery had to know when he received the loan papers that there were no guaranties other than the execution of the note and mortgage by Kohl as president of BCDJ. In actuality, he received no mortgage on the Leisy ranch, and, except for a very small portion of the trailer park, his mortgage on that park was inferior to a $190,000 mortgage to the profit sharing retirement plan for Dudden Elevator, Inc. Both Schroeder and Stansbery thought that Stansbery was to receive a personal guaranty from Schroeder at that time, but a written document to that effect was never found. In any event, any personal guaranty was discharged in Schroeder's bankruptcy.

The mortgage and promissory note for the loan were prepared at Schroeder's office under his instructions. Stansbery and Schroeder discussed the loan arrangements several times. Schroeder testified that during the second or third conversation, when Schroeder brought the documents to Stansbery to sign, Schroeder told Stansbery that he could not represent Stansbery in this transaction and that Stansbery should go talk to another attorney. Stansbery testified that Schroeder only told him he could talk to another attorney if he wanted to, but gave him no reason why he should, and that Stansbery responded that one attorney was enough, that was all he could afford. Stansbery did admit he knew Schroeder was an officer and had an ownership interest in BCDJ.

Stansbery signed the documents, and BCDJ made regular payments on the loan from November 1979 until sometime in 1982. Subsequently, the loan went into default for nonpayment. The certified public accountant who testified for Stansbery stated that based on BCDJ's tax returns and statement of debt of the corporation, BCDJ had insufficient cash coming into the corporation to pay either the debts it owed or the real estate taxes on the property it owned at the time Stansbery made the loan to BCDJ.

Stansbery brought suit against Schroeder, and a jury trial

was had on the issue of Schroeder's negligence. Contrary to Schroeder's wishes, the jury was not given instructions regarding Stansbery's alleged contributory negligence or failure to mitigate damages. The jury found for Stansbery in the amount of $66,346.48.

The issues raised by Stansbery regarding the foregoing facts are whether the trial court erred (1) when it instructed the jury that it should not determine the amount of interest, if any, to which the successful party may be entitled, and (2) when it did not add accrued interest due on the promissory note to the amount of the jury's verdict. Schroeder, on cross-appeal, contends the trial court erred (1) in excluding evidence and failing to instruct the jury on the issue of Stansbery's contributory negligence, (2) in excluding evidence and failing to instruct the jury on the issue of Stansbery's failure to mitigate damages, and (3) in giving instruction No. 12 regarding the durable power of attorney. Both parties have raised one additional assignment of error each which does not deal with the above facts, so each will be addressed separately.

Stansbery's two assignments of error can be dealt with together—that is, whether Stansbery is entitled to recover as part of his damages the amount of accrued interest on the promissory note he obtained from BCDJ. We believe the trial court correctly ruled that he was not so entitled. However, in arriving at this conclusion it was necessary for us to make general inquiry into the area of proximate cause. Having done so, we note as plain error under Neb. Ct. R. of Prac. 9D(1)d (rev. 1986) that Stansbery did not prove that the loss of the unpaid principal or interest was proximately caused by Schroeder's negligence. Accordingly, that issue should never have been submitted to the jury, and we must reverse the judgment of the district court and order the cause dismissed.

In his brief Stansbery argues that he is entitled to the interest on the note as well as the balance of the unpaid principal which the jury awarded him. He then cites us to cases in which we determined that accrued interest on a promissory note was a proper element of damages. See, e.g., *First Nat. Bank v. Bolzer*, 221 Neb. 415, 377 N.W.2d 533 (1985); *Bank of Axtell v. Johnson*, 125 Neb. 154, 249 N.W. 302 (1933). Those cases were,

however, suits based on breach of contract—failure to pay a note—while this case is one based on negligence.

In a contracts case the proper measure of damages is an amount which will compensate the injured person for loss which a fulfillment of the contract would have prevented or breach of it has entailed. *May v. Marijo Corp.*, 207 Neb. 422, 299 N.W.2d 433 (1980). Thus, in an unpaid note case, one of the elements of damages is the amount of interest the aggrieved party would have obtained had the breach not occurred. In a negligence case, however, the proper measure of damages is that which will place the aggrieved party in the position in which he or she would have been had there been no negligence. 25 C.J.S. *Damages* § 71 (1966). See R. Mallen & V. Levit, Legal Malpractice § 303 (2d ed. 1981). Thus, each of the plaintiff's allegations of negligence must be addressed in order to determine whether any evidence was presented from which it can be inferred that had the defendant not been negligent, Stansbery would have received either the balance of the unpaid principal, or the accrued interest on the note, or both.

Stansbery alleged that Schroeder breached his duty to Stansbery in the following manner: (1) that Schroeder negligently prepared the mortgage and note accompanying the loan; (2) that Schroeder negligently failed to advise Stansbery of the character of the documents; (3) that Schroeder negligently failed to get personal guaranties for the loan from the other shareholders of BCDJ; (4) that Schroeder negligently failed to fully and completely disclose his involvement in BCDJ to Stansbery; (5) that Schroeder negligently failed to obtain Stansbery's consent to Schroeder's conflicting representation of Stansbery and BCDJ; (6) that Schroeder negligently failed to withdraw his representation of either Stansbery or BCDJ, when Schroeder knew or should have known that such representation of both was adverse to the interest of the other; (7) that Schroeder negligently entered into business transactions which were in conflict with Stansbery's interest; and (8) that Schroeder negligently failed to follow Canon V, DR 5-101(A), 5-104(A), and 5-105(B) and (C), of the Code of Professional Responsibility.

In a malpractice action against an attorney for negligence,

we see no reason why the same general elements as are necessary in any other case based on negligence must not be alleged and proved; i.e., duty, breach of duty, proximate cause, and resulting damages. *Floridia v. Farlee*, 201 Neb. 39, 266 N.W.2d 204 (1978). The general rule regarding an attorney's duty to his or her client is that " 'the attorney, by accepting employment to give legal advice or to render other legal services, impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. . . .' " *Ishmael v. Millington*, 241 Cal. App. 2d 520, 523, 50 Cal. Rptr. 592, 593 (1966). See, also, *Ames Bank v. Hahn*, 205 Neb. 353, 287 N.W.2d 687 (1980). Specifically dealing with the issue of attorney malpractice is *Wooddy v. Mudd*, 258 Md. 234, 237, 265 A.2d 458, 460 (1970), which stated as follows: " 'In a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) The attorney's employment; (2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client.' . . ."

Allegations (1) and (2) can be dealt with summarily. The record reflects no evidence upon which a jury could find that Schroeder either had negligently prepared the mortgage and note or that he failed to advise Stansbery of the character of those documents. Thus, neither claim could have been the basis for the jury's verdict of the balance of the unpaid principal, let alone for interest.

Allegation (3), that Schroeder negligently failed to get personal guaranties for the loan from the other shareholders of BCDJ, presents more of a problem. Robert Coupland, one of Stansbery's expert witnesses, testified that Schroeder was negligent in failing to get the other shareholders to personally guarantee the loan. But assuming that the jury could have found that Schroeder breached his duty does not mean that Stansbery was automatically entitled to the unpaid principal and accrued interest on the money he loaned to BCDJ. Stansbery also had to present evidence that Schroeder's failure to obtain the personal guaranties proximately caused Stansbery's loss.

As we stated in *Greening v. School Dist. of Millard*, 223 Neb. 729, 735, 393 N.W.2d 51, 57 (1986): " ' "The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event, if the event would have occurred without it." ' " In this case, the reason Stansbery could not collect on the note was because BCDJ and Schroeder both went bankrupt. Unless Stansbery could prove that the personal guaranties of the other shareholders would have prevented his loss, Schroeder's negligence in failing to obtain those guaranties was not the cause of Stansbery's loss. This Stansbery did not do. He presented no evidence with regard to the financial condition of the other shareholders. In the absence of any evidence that the guaranties of the other shareholders would have prevented his loss, Stansbery was not entitled to either the unpaid principal or accrued interest under this allegation of negligence.

Somewhat analogous to this situation is *Pickens, Barnes & Abernathy v. Heasley*, 328 N.W.2d 524 (Iowa 1983). This was a suit for attorney fees and a counterclaim for damages for legal malpractice arising out of a lawsuit which the attorneys had handled for Heasley against a third party. The jury, in returning a verdict for Heasley, determined the damages to be the amount of the judgment Heasley would have obtained against the third party but for the negligence of the attorneys.

The Iowa Supreme Court held that it was error to let the verdict stand because a party seeking damages in such a situation has the burden not only of proving the amount of the judgment he or she would have obtained, but, also, what amount could be collected. In doing so, the court stated at 526:

> Heasley did not introduce substantial evidence from which a jury could reasonably find that a judgment against Weavers would be collectible in full or in an ascertainable part. The jury was left to speculation except for contrary evidence Pickens introduced indicating that the Weavers were insolvent. A jury must be provided with facts affording a reasonable basis for ascertaining the loss.

Allegations (4) to (8) all deal with Schroeder's alleged

negligence in handling the conflict of interest that occurred when he represented both sides of this loan transaction. As stated in *Ishmael v. Millington*, 241 Cal. App. 2d 520, 526-27, 50 Cal. Rptr. 592, 595-96 (1966):

> A lawyer owes undivided loyalty to his client. Minimum standards of professional ethics usually permit him to represent dual interests where full consent and full disclosure occur. The loyalty he owes one client cannot consume that owed to the other. Most descriptions of professional conduct prohibit his undertaking to represent conflicting interests at all; or demand that he terminate the three-way relationship when adversity of interest appears. Occasional statements sanction informed representation of divergent interest in "exceptional" situations. Even those statements demand complete disclosure of all facts and circumstances which, in the attorney's honest judgment, may influence his client's choice, holding the attorney civilly liable for loss caused by lack of disclosure.

See, also, *Crest Inv. Trust v. Comstock*, 23 Md. App. 280, 327 A.2d 891 (1974). The evidence reflects that Schroeder did not fully explain the problems with his dual representation to Stansbery. Stansbery's expert witness also testified that it was negligent for Schroeder to have continued to represent Stansbery given the facts in the case. Thus, there was sufficient evidence in the record to support a finding that Schroeder breached his duty to Stansbery. But, once again, breach of a duty is not enough. An attorney can only be civilly liable for losses to his or her client proximately caused by the breach of that duty.

In this case Stansbery never presented any evidence that had Schroeder fully disclosed his involvement with BCDJ, obtained Stansbery's consent to the dual representation, withdrawn from representation of Stansbery, not entered into business transactions which conflicted with Stansbery's interest, or followed Canon V, DR 5-101(A), 5-104(A), and 5-105(B) and (C), of the Code of Professional Responsibility, Stansbery would not have loaned BCDJ his money, or that BCDJ would not have defaulted on the loan. Without this necessary showing

of how Schroeder's conduct caused Stansbery's loss, there was nothing upon which the jury could base its verdict. Thus, we believe the verdict for the plaintiff in this case was improper and must be reversed. We thus do not need to address Schroeder's assignments of error on cross-appeal.

Stansbery has also assigned as error that the trial court erred in sustaining Schroeder's demurrer to the allegations of negligence contained in Stansbery's third amended petition regarding a school land lease deal. The third amended petition, filed on December 6, 1984, for the first time raised the issue of Schroeder's negligence regarding a school land lease of which Schroeder was to effect the renewal in the fall of 1981. On January 7, 1985, Schroeder filed a demurrer to the third amended petition, which demurrer was sustained on February 1, 1985, for the reason that the statute of limitations had run on that part of the pleading. On February 6, 1985, Stansbery filed an election to stand on his third amended petition. But then, on May 6, 1985, the court considered Stansbery's motion to amend his petition, which was granted instanter. Stansbery filed his fourth amended petition the same day. The portion dealing with the school land lease was not included in that petition. Schroeder answered on May 16, 1985, and trial was had on May 28 to 31.

Stansbery contends the court erred in sustaining Schroeder's demurrer because Stansbery had a continuing attorney/client relationship with Schroeder until 1983, which would have tolled the running of the statute of limitations on the school land lease issue. We need not address that issue in light of the fact that Stansbery elected to amend his third amended petition to leave out any reference to the school land lease issue. Had Stansbery wished to preserve that issue for appeal, he should not have filed a fourth amended petition which did not make any reference to that issue.

This then brings us to the last issue asserted by Schroeder on his cross-appeal, that being that the trial court erred in giving the supplemental instruction to the jury. The court instructed the jury that if it returned a verdict during the first 6 hours of deliberation, the verdict must be agreed to by all of the jurors, and if, after deliberating for 6 hours, the jurors were unable to

arrive at a unanimous verdict, 10 or 11 of the jurors could return a verdict. The instruction then stated that the case was submitted to the jury at 12:31 p.m., at which time the jury's deliberations were deemed to commence. But then at 6:35 p.m., the trial court gave a supplemental instruction to the jury, which stated that its deliberations had commenced upon the jurors' return from lunch at 2 p.m. It is this instruction that Schroeder contends was conflicting and prejudicial. In light of the fact that we have reversed the jury's verdict, it is not necessary to a determination of this case that we address that issue. However, we do make reference to *Keating v. Klemish*, 214 Neb. 458, 463-64, 334 N.W.2d 440, 443 (1983), in which this court stated:

It is noted that in *Cartwright and Wilson Constr. Co. v. Smith*, 155 Neb. 431, 442, 52 N.W.2d 274, 281 (1952), it was held that the length of time devoted to meals "while the jurors are deliberating upon their verdict cannot be shown for the purpose of proving that they did not deliberate for the prescribed length of time."

We therefore reverse the judgment of the district court and remand the cause with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.